## THE STATE *against* SPALDING.

| 19 | 233 |
| 69 | 726 |
| 69 | 729 |

Where the prosecutor, in an information against *A*, for putting off a counterfeit bank bill, knowing it to be counterfeit, having given evidence to prove, that *A* and *B* had entered into a conspiracy to put off counterfeit bills similar to the bill described in the information, attempted to show, that *A* knew the bill in question to be counterfeit ; and for this purpose, he offered evidence to prove, that at two different places, a day or two previous to the alleged offence, and at another place, soon after its commission, *B* put off other counterfeit bills of the same bank, *A* being in company with *B* immediately before and after such putting off by *B*, but not actually present with him, at those times ; it was held, that the whole of such evidence was proper

New-Haven,
July, 1848.

The State
v.
Spalding.

to go to the jury; and if they were satisfied, that such conspiracy existed between $A$ and $B$, and that $B$, in pursuance thereof, put off such counterfeit bills, in the manner stated, these acts of $B$ were as strong evidence against $A$ to prove his knowledge of the bill in question being counterfeit, as though he had personally done the same acts.

THIS was an information for uttering and putting off, as true, a counterfeit bank bill of the *Randolph Bank*.

The cause was tried, on the plea of *Not guilty*, at *New-Haven, January* term 1848, before *Hinman*, J.

On the trial, the attorney for the state, for the purpose of proving that the prisoner, at the time he passed the counterfeit bill described in the information, knew it to be counterfeit, offered evidence to prove, and claimed he had proved, that about that time, the prisoner, in company with one *Wilson,* entered into a combination or conspiracy to pass off, upon such persons as they could induce to take them, other counterfeit bills of the *Randolph Bank,* similar to the bill described in the information; that in pursuance of such combination and conspiracy, the prisoner and *Wilson,* a day or two previous to the passing of the bill in question, were together, at the public house of one *Hurd* in *Southford,* and while the prisoner was sitting in the bar-room, *Wilson,* who appeared as a stranger, put off, at a store across the street, one of such counterfeit bills; that on the same day, the prisoner and *Wilson* were together in a wagon, and passed the turnpike gate between *Humphreysville* and *Naugatuck,* and after they had passed, *Wilson* got out of the wagon, and went to the keeper, and paid the gate-fee, and in so doing, passed to him another of such counterfeit bills; that on the evening of the day when the bill in question was passed, the prisoner and *Wilson* were together, at the public house of one *Ransom* in *Oxford,* and while they were there, another of such counterfeit bills was passed, at the store adjoining *Ransom's* house, by *Wilson,* appearing as a stranger there.

These and other circumstances were relied upon, by the public prosecutor, as showing a combination and conspiracy between the prisoner and *Wilson* to pass such counterfeit bills, at the places above-mentioned: and he claimed, that if the jury were satisfied, that such combination and conspiracy existed between the prisoner and *Wilson,* and that *Wilson,* in pursuance thereof, passed said counterfeit bills, at the

places above-mentioned, while the prisoner was with him as aforesaid, such passing by *Wilson* was proper evidence to go to the jury on the question of the prisoner's knowledge of the bill described in the information being counterfeit, at the time he passed it; although there was no evidence that he was present with *Wilson*, at the times when said bills were so passed by him, or that he did, or could, see *Wilson* pass them.

*New-Haven, July, 1848.*

The State *v.* Spalding.

The prisoner objected to all this evidence, and particularly, to all the acts of *Wilson* not in his presence, and to all acts subsequent to the passing of the bill in question.

But the court over-ruled the objection, and admitted the evidence; and thereupon charged the jury in conformity with the claim of the attorney for the state, that if they were satisfied, that *Wilson* passed said bills in pursuance of a combination between him and the prisoner, the prisoner was chargeable as if he had personally passed them, and it would be evidence tending to show his knowledge of the bill in question being counterfeit, in the same manner as if he himself had personally passed said bills.

The jury returned a verdict of *guilty* against the prisoner; and he thereupon moved for a new trial.

*C. B. Phelps* and *Munson*, in support of the motion, contended, That the evidence objected to, by the prisoner, was inadmissible. In the first place, it was collateral to the point in issue; tending only to prejudice the minds of the jury, and to surprise the party. 1 *Greenl. Ev.* 58, 9. *s.* 50, 51. *Sw. Ev.* 153    *Rosc. Cr. Ev.* 57.

Secondly, it afforded no reasonable presumption of any matter in controversy. 1 *Greenl. Ev.* 59. *s.* 52. Presumptions must arise from facts proved, and not from surmise; and generally, from the facts in issue. *Sw. Ev.* 137. 1 *Chitt. Cr. L.* 564.   1 *East's P. C.* 96.

Thirdly, it related to transactions, which were not only not in issue, but which took place not in the presence of the prisoner. *Sw. Ev.* 155.

Fourthly, the combination or conspiracy attempted to be proved, was not provable in this case, because it was of itself a distinct offence. *Rosc. Cr. Ev.* 57.

Fifthly, a conspiracy is a fact which must be established, and the party's agency shown, before evidence of any acts are admissible to charge him.  *Sw. Ev.* 155, 6.  And the party's agency must be established too, by other evidence than such as may be derived from the acts proposed to be proved.  *Scott* v. *Crane,* 1 *Conn. R.* 255.

Sixthly, the evidence relative to transactions *subsequent* to the alleged uttering, was inadmissible for any purpose.  *Rosc. Cr. Ev.* 70.

*C. A. Ingersoll,* contra, after remarking that the prisoner's knowledge that the bill passed by him was a counterfeit bill, was a material fact alleged in the information, and was in issue on the trial, contended, That the evidence adduced to prove this fact, was admissible.

In the first place, evidence that the prisoner had uttered other counterfeit bills of the same kind, or that he had them in his possession, would be clearly admissible, to show that he knew that the bill in question was counterfeit.  1 *Phill. Ev.* 179.  So proof of his passing another counterfeit bill, *after* passing the one in question, is admissible, to show knowledge that the one in question was counterfeit.  *Rex* v. *Smith,* 4 *Car. & Pa.* 411.  (19 *E. C. L.* 448.)

Secondly, proof that there was a combination between the prisoner and *Wilson* to pass other counterfeit bills of the same bank, was, upon the same principle, proper to show that the prisoner knew that the bill in question was counterfeit.

Thirdly, where a combination or conspiracy is proved, all persons engaged in it are liable for the acts of each of other, committed in furtherance of the common design.  1 *Greenl. Ev.* 122, 3. *s.* 111.

Fourthly, the evidence objected to and admitted *tended* to prove such a combination as was claimed ; and if it tended to prove it, it was proper to go to the jury for their consideration.  The question here is, not whether the evidence made out the combination, but whether it tended to do so.  If it was a circumstance going to prove it, it ought to be received.  *The Queen* v. *Kenrick,* 5 *Ad. & El.* 48.  (48 *E. C. L.* 48.)  *Commonwealth* v. *Hunt,* 4 *Metc.* 111.

CHURCH, Ch. J.   One *Wilson*, on several occasions and
at different places, uttered counterfeit bank bills of a partic-
ular description.   The prisoner is detected in passing bills of
the same description, which also are counterfeit.   And now,
for the purpose of showing that this prisoner knew that the
bills passed by him were forged, the prosecutor offers to
prove, that *Wilson* and the defendant had conspired to pass
counterfeit money.   This testimony was proper.   If such
combination existed, the law presumes, that what was known
by one, or done by one, in matters connected with the joint
purpose, was known and done by both.   If the prisoner,
with his own hand, had passed counterfeit bills of a like kind,
either before or after the act in question, this might be proved,
to show his science.   And so, if *Wilson* had done the same
thing, the conspiracy being established, for the same reason
it might be proved, to show a guilty knowledge by his asso-
ciate.   1 *Ph. Ev.* 74. 2 *Russ. on Crimes*, 1824.   1 *Greenl.
Ev.* § 111.   *Rex* v. *Smith*, 4 *Car. & Pa.* 411. (19 *E. C. L.*
448.)

It became necessary, therefore, to prove the combination
or conspiracy.   The proof of this is not often made, by direct,
open and positive evidence ; but more generally and more
naturally, by proving a repetition of acts of a character con-
ducing to show a mutual purpose.   In such case, it is seldom
true, that any one act, taken by itself, can be detected as
tending to prove a combination ; but when it is seen in con-
nexion with other acts, its true nature may be discovered.
And so, as this species of proof is multiplied, a strong case
of unlawful conspiracy is often established.   2 *Stark. Ev.*
401.   *Rex* v. *Roberts*, 1 *Campb.* 399.

In the present case, the proof offered and received, was,
that a day or two before the defendant passed the bill in
question, he was present at a tavern in *Southford*, with *Wil-
son*, a pretended stranger to him, when *Wilson* put off, at a
store near by, one of these counterfeit bills.   Again, on the
same day, while together as travellers through a turnpike
gate, *Wilson* repeated his crime.   And so, on the evening of
the very day on which the prisoner passed the bill for which
he was arrested and on trial, he was found in company with
the same pretended stranger, at *Oxford*, while he was engaged
in his vocation of uttering counterfeit money.   It would

*New-Haven,*
*July, 1848.*

The State
*v.*
Spalding.

have been enough to justify the admission of this evidence, if these repeated acts of *Wilson* had only conduced to show the prisoner's knowledge of them and participation in them ; but it seems to us, that they fell very little short of full proof of the prisoner's guilt, as a principal, aiding and assisting in these crimes ; and went as far to show his knowledge that the bill which he put off was spurious, as if he had passed the other bills from his own pocket.

We do not advise a new trial.

In this opinion the other Judges concurred, except ELLS-WORTH, J., who was absent.

New trial not to be granted.