THE STATE v. FRANKLIN D. THOMPSON ET AL.

First Judicial District, Hartford, October Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY AND HALL, Js.

The defendants were charged with conspiracy to cheat and defraud by means of false representations and devices. *Held* that the conspiracy might be established by proving the acts and declarations of each defendant in furtherance of the alleged common undertaking, although made in the absence of the other; but that evidence of the declarations of one defendant implicating his absent co-defendant, could not affect the latter, until the trial court should be of the opinion that a *prima facie* case of combination between the defendants had been made out.
Proof of facts which conduce to show the conspiracy charged, will justify the trial court in admitting in evidence the acts and declarations of the several conspirators; it being the province of the jury to pass upon the adequacy of the evidence to establish the conspiracy.

[Argued October 5th—decided November 30th, 1897.]

INFORMATION for conspiracy, brought to the Superior Court in Litchfield County and tried to the jury before *Pren-*

*tice, J.;* verdict and judgment of guilty, and appeal by the accused for alleged errors in the rulings of the trial court. *No error.*

The information contained two counts, the first of which charged the defendants with having, in July, 1896, at Colebrook in said county, conspired between themselves to cheat and defraud William F. Byrd and Catherine Byrd, his wife, of Brooklyn, New York, out of a certain mortgage of $3,000, owned by said William Byrd upon land in the State of New York, and out of land in Brooklyn, New York, of the value of $2,000, belonging to Catherine Byrd; and in the second count, with having, at said Colebrook, in September, 1896, so conspired to cheat and defraud the said Catherine Byrd out of certain land in Brooklyn, New York, of the value of $2,000, owned by her.

The information charged that such conspiracy and agreement between the defendants was to cheat and defraud the said persons by inducing them to exchange their said property mentioned in the first count, for certain land in said Colebrook belonging to said Edward C. Thompson, and certain personal property of said Franklin D. Thompson; and in the second count, for land in said Colebrook belonging to said Edward C. Thompson, " by the following false, fraudulent and wicked representations, pretenses, devices and unlawful means " (fully set forth in each count), which were to be made to said Byrds and to said William F. Byrd as agent of said Catherine Byrd.

Said alleged false representations, pretenses, etc. consisted chiefly in false representations to be made by said F. D. Thompson, relative to the value of the property of the defendants to be given in exchange for that of the said Byrds, as to its character and the profitable uses to which it had been and could be put, the amount of personal property to be included in the exchange, the sums which the defendants had been offered for said property, and in showing to said Byrds certain false photographs of said property.  The second count alleged the accomplishment of the design of the

conspiracy set forth in that count.    The first count contained no such averment.

The defendants pleaded severally not guilty.    The jury found the defendants not guilty upon the first count, and guilty upon the second count, as charged in the information.

The punishment by fine and imprisonment in jail was not greater than that imposed by § 1581 of the General Statutes, for obtaining property by false pretenses.

Upon the trial said William F. Byrd testified to interviews and conversations with said F. D. Thompson, in the absence of E. C. Thompson, in Connecticut and in New York ; to conversations at an interview in Connecticut, in the early part of the negotiations, between himself and E. C. and F. D. Thompson together; to a conversation with E. C. and F. D. Thompson together, after the exchange of property had been made; to the false representations made and the means employed on said occasions, as alleged in the information, to accomplish the purpose of the conspiracy ; and to admissions made by E. C., in the presence of F. D. Thompson, and in his absence after the sale had been completed, as to his, E. C. Thompson's connection with F. D. Thompson and with said transaction.    To proof of the representations so made by F. D. Thompson in the absence of E. C. Thompson, counsel for the accused objected, upon the ground that the evidence should first be offered of the existence of the alleged combination.    The attorney for the State having stated that to establish the alleged conspiracy he should rely mainly upon proof of the separate acts of the two defendants, the court admitted said evidence with the provision that after the State should present its proof of the conspiracy, counsel for the accused might move to strike out the evidence of such admissions, and that the court should thereupon rule whether the State had presented such *prima facie* proof of the conspiracy as would render the declarations of one conspirator in furtherance of the conspiracy, made in the absence of the other, admissible against both.    Counsel for the defendants excepted to said ruling.

The State thereafter offered evidence of interviews be-

tween said Byrd and E. C. Thompson and F. D. Thompson
together, at which, among other things, the following state-
ments were made, as appears by the record: " Mr. Franklin
Thompson said ' Oh, I am sorry I made this trade.' I (Mr.
Byrd) said: ' Mr. Thompson, hold on now; I am willing to
trade back. I want my property back. I will give you $250
if you will trade back.' Mr. E. C. Thompson said: ' Mr.
Byrd, he can't do it, it belongs to me; he is my agent; Frank
is doing business for me; I gave Frank the money to settle
with you, and he can't do anything with it; it is mine.' "
The State also " offered further testimony tending to show
the existence of the conspiracy alleged, and E. C. Thomp-
son's participation in it, including deed and record evidence
showing that the property transferred and conveyed by the
Byrds, in the transaction between the parties, was all trans-
ferred and conveyed to said E. C. Thompson; that all the
property conveyed to the Byrds in exchange therefor stood
upon the land records in the name of said E. C. Thompson,
and that he had a beneficial interest in it together with his
brother Franklin D.; that on September 27th, 1896, said E.
C. Thompson transferred said Mt. Vernon mortgage, assigned
to him by the Byrds, to Henry Gay of Winchester, and that
on October 3d, 1896, he conveyed the major portion of said
Brooklyn property deeded to him by the Byrds, to one John
T. Connelly; and also tending to show that said transaction
and exchange was fraudulent, and that as the result of it,
the said Byrds parted with property of considerable value in
exchange for property of very little value. Thereupon the
court announced that it was prepared to dispose of the ob-
jections which had been or might be made, to the effect that
the State had not *prima facie* established the existence of the
alleged conspiracy, and therefore was not entitled to have
evidence of the acts or declarations of one of the accused,
claimed to have been done and made in the absence of the
other, but pending and in the furtherance of the conspiracy,
admitted against the other, and ruled that such *prima facie*
proof had been made, and that evidence of such acts and
declarations already received, or to be proffered, would be

admitted, to go to the jury against both the accused." Counsel for the defendants excepted to said ruling.

The court excluded from this ruling, as against F. D. Thompson, the statements of E. C. Thompson made after the purpose of the conspiracy had been accomplished, such admissions having been received as against E. C. Thompson only, and the jury having been so expressly instructed. To the ruling of the court admitting proof of such declarations of E. C. Thompson against himself only, counsel for the accused excepted.

*William C. Case* and *Wellington B. Smith*, for the appellants (the accused).

The rule is well settled that until sufficient evidence has been introduced of the existence of the combination, evidence of the declarations of one co-conspirator will not be received against another. 4 Amer. & Eng. Ency. of Law, 631, 632. Here, confessedly, no evidence of combination had been offered. It may be true that the order of evidence in conspiracy is to some extent a matter of discretion with the court. If so, it should clearly appear to be a matter of necessity that such discretion be exercised in favor of admitting the declarations before the combination is proved. 1 Gr. on Ev. § 111; *Burke* v. *Miller*, 7 Cush. 550. But our complaint is not merely to the exercise of discretion by the court as to the order of proof; we object to his exercise of discretion as to the character and purpose of the evidence. The court not only admitted the declarations out of their order, but told the jury that the declarations of one conspirator in the absence of the other was competent evidence to establish the conspiracy. This, certainly, was erroneous. *Cuyler* v. *McCartney*, 40 N. Y. 229; *U. S.* v. *Cole*, 5 McLean, 513, 601; Roscoe, Cr. Ev. (7th ed.) 416; Wharton, Cr. Ev. (8th ed.) 695–697. An examination of the record shows that the court ruled these declarations in twice,—the first time as each declaration was offered and objected to, and again all the declarations together, on the ground that a *prima facie* case had at last been made out. Having permitted and di-

rected the jury to use these declarations to establish a conspiracy, the court then says he admits them on the ground that a *prima facie* case has been made out by the help of these same declarations.

*Donald T. Warner*, State's Attorney, with whom was *James Huntington*, for the appellee (the State).

It was within the province of the trial court to determine when a *prima facie* case of conspiracy had been made out. *Knower* v. *Cadden Clothing Co.*, 57 Conn. 223; *Cowles* v. *Coe*, 21 id. 234. The order of testimony pursued by the State, and which was wholly within the discretion of the trial court to allow, was the only logical and proper one. It detailed what was done and said, first by both of the alleged conspirators in presence of each other; then the acts and false representations of Franklin D. Thompson alone; then the situation of the property sought to be palmed off on Byrd, showing that the record title was all in E. C. Thompson, and that he had a beneficial interest in it, the relations between the parties, and the value of the respective properties which were the subject of the exchange; and then the receipt by E. C. Thompson of the avails of the fraudulent transaction. The order of the testimony is in all cases within the discretion of the presiding judge, and should it be deemed to have been incompetent when admitted, it may be rendered unobjectionable by what is afterwards proved. 2 Bishop's Crim. Procedure, § 231; *Johnson v. State*, 29 Ala. 62; *Spies* v. *People*, 122 Ill. 1; *State* v. *McGee*, 46 N. W. Rep. 764. It nowhere appears in the finding that any declarations of F. D. Thompson were formally admitted until the court had ruled that a *prima facie* case had been established.

HALL, J. The information charges the accused with the offense of conspiracy. This is a misdemeanor at common law; 2 Wharton Crim. Law, § 1342; 2 Swift's Dig. 357; *State* v. *Setter*, 57 Conn. 461; and as such is punishable under § 1642 of the General Statutes fixing the penalties for offenses at common law. The essence of the offense charged

is the unlawful combination between the defendants, and not the accomplishment of the ultimate design of their agreement. 3 Greenleaf's Ev. § 91; *State* v. *Wilson*, 30 Conn. 500, 507; *State* v. *Bradley*, 48 id. 535, 549. The confederation becomes an offense, either because of the unlawful object to be effected, or the unlawful means to be employed. *State* v. *Glidden*, 55 Conn. 46. The agreement to act in concert for the attainment of the fraudulent purpose, is susceptible of proof in different ways: There may be direct evidence of the actual meeting and agreement to pursue the common object. The joint participation of all the persons charged, in the acts by which the common purpose is to be accomplished, may be shown by direct evidence. The combination may be established by proof of the admissions of each of the accused conspirators who are parties to the action, made either during or after the accomplishment of the common purpose; proof of each admission being received in evidence only against the person making it. It may be proved by circumstantial evidence, by proof of the separate acts of the individuals and of circumstances from which the illegal confederation may be inferred. From the nature of the offense itself, such corrupt agreement of the parties, entered into in secret, can only in exceptional cases be established in any other manner. 3 Greenleaf's Ev. § 93; 1 Taylor on Ev. (8th ed.) Part 2, § 591; 2 Wharton, Crim. Law, §§ 1398 and note, 1401; 2 Bishop on Crim. Procedure, § 227; *Reg.* v. *Brittain*, 3 Cox C. C. 76; *State* v. *Spalding*, 19 Conn. 233, 237.

It is undoubtedly the rule that evidence which in the opinion of the court is sufficient to establish *prima facie* the existence of the conspiracy, should be first presented, before proof is received of the acts and declarations of the individual conspirators as affecting others than those whose acts and declarations are proved. But the order in which such proof should be presented is a question within the discretion of the trial court. 1 Greenleaf's Ev. § 111; 3 id. § 92.

Of the questions raised by the reasons of appeal, but two are discussed in the brief of defendants' counsel. These are,

first, the ruling of the court admitting, against the defendants' objection, proof of the acts and declarations of F. D. Thompson, in pursuance of the purpose of the alleged conspiracy, and in the absence of E. C. Thompson ; and second, the ruling at a later stage of the trial that the State had presented such *prima facie* proof of a combination between the defendants as rendered such acts and declarations of each, made in the absence of the other, admissible against both.

The defendants contend that when the first ruling was made no evidence of the alleged conspiracy had been adduced; that there was no urgent occasion for reversing the usual order of proof, inasmuch as the State's Attorney had said that he had other evidence of the conspiracy which he proposed to introduce later, and that the court in making said ruling held that the declarations of one conspirator were competent evidence to establish the conspiracy.

What evidence had been offered prior to this ruling, what the precise ruling of the court was, and upon what grounds it was made, we are left to gather from what is apparently a part of the stenographer's record of the proceedings in the trial, incorporated in the finding, including questions and answers of the witness Byrd, remarks of the judge, and objections and arguments of counsel. A direct finding upon these points would have been much more satisfactory. But, as we interpret the record before us, evidence had been introduced before the ruling under consideration was made, of an interview in Connecticut between Byrd and F. D. and E. C. Thompson, and of statements made by E. C. Thompson in the presence of his brother F. D. Thompson, which clearly tended to prove the combination between them. Again, as we understand the record, the attorney for the State did not inform the court that he was in the possession of evidence independent of the acts of the parties, to establish the conspiracy, but that he should rely, in proof of the combination, upon a narration by the witness of the entire transaction as it occurred, showing the separate acts of the two defendants, and should claim that from the acts of each, and the circumstances surrounding such acts, the combination of the accused persons should

be inferred.   Nor do we think it can fairly be said that the court held that the declarations of one of the conspirators was competent evidence to establish a combination between the two, in the sense that such acts and declarations of one could be sufficient *prima facie* evidence of the combination of the two.

The extent of the ruling, as we read the finding, was that the State might prove the separate acts ; not of one alone, but of each of the two defendants, including the false representations made by each in carrying out the alleged common design (and such representations are themselves acts), as furnishing facts from which it could be inferred that they were acting in concert to defraud the Byrds.   The State proposed by the evidence offered, to show that F. D. Thompson exchanged the land of his brother E. C. Thompson, which was of very little value, for land of the Byrds which was of very considerable value ; that to effect such exchange he, in the absence of his brother, made the false representations described in the information ; to further prove separate acts of E. C. Thompson and declarations made by him to Byrd, showing his knowledge and approval of the acts of his brother and his participation in the fraud, and to ask the jury to find from such facts and circumstances that the defendants had conspired together to accomplish the fraud, as charged in the information.   This was a legitimate way of proving the existence of a conspiracy ; see the authorities cited above.   Proof of the acts and representations of F. D. Thompson was one step in establishing the conspiracy.   As the acts and declarations of E. C. Thompson showing his knowledge and approval of the acts of his brother were necessarily subsequent in point of time, they might properly be made so in the order of proof ; but this, as we have said, was wholly discretionary with the court.

The second ruling complained of, namely, that the State, at the time this ruling was made, had so far established the existence of the conspiracy as to render admissible as against both defendants, acts and declarations of one in the absence of the other, made in furtherance of the object of the con-

spiracy, was proper. The question is always one within the province of the court to decide. 3 Greenleaf's Ev. § 92; *Cowles* v. *Coe*, 21 Conn. 220, 234; *Knower* v. *Cadden Clothing Co.*, 57 id. 202; *Burke* v. *Miller*, 7 Cush. 547. The court in making such a ruling does not assume to pass upon the adequacy of the evidence to establish the conspiracy; that question is left for the jury to decide. Proof of facts which conduce to show the conspiracy will justify the admission of evidence of the acts and declarations of the several conspirators. *State* v. *Spalding*, 19 Conn. 233; *Gardner* v. *Preston*, 2 Day, 205. We think the evidence detailed in the finding not only conduced to establish the alleged conspiracy, but was quite sufficient to warrant the jury in finding the fact proved.

We refrain from discussing several of the reasons of appeal, which have not been referred to by defendants' counsel in their argument or brief.

There is no error.

In this opinion the other judges concurred.