THE STATE, DEFENDANT IN ERROR, v. WILLIAM C. ARM-
STRONG, PLAINTIFF IN ERROR.

Submitted June 16, 1915—Decided November 15, 1915.

1. In order to enable the defendant in a criminal case to have the
   benefit of specifications of causes for reversal, under sections
   136 and 137 of the Criminal Procedure act, there must be a cer-
   tificate of the trial judge that the record presented is "the entire
   record of the proceedings had upon the trial," and the return
   made by the trial judge to the writ of error, of "the indictment,
   judgment of the court, together with all things touching and con-
   cerning the same, and the entire record thereof as by the within
   writ to me directed, I am commanded," is not sufficient for such
   purpose, when the writ commands only the return of the record
   and proceedings in the giving of the judgment. The certificate
   must be of the proceedings had upon the trial.
2. Where the criminal charge is a conspiracy between a depositor
   and the treasurer of a trust company to defraud the company
   of its funds by means of checks drawn against the company by
   the depositor which he had no funds on deposit to meet, and
   which by a corrupt agreement with the treasurer were not to
   be charged to his account, the books of the trust company show-
   ing the depositor's account are competent to be offered in evi-
   dence for the purpose of showing that the corrupt agreement
   was carried out, it appearing that the treasurer had control of
   the books, that the depositor knew that the checks were not to
   be charged to his account, and that he had no funds with the
   company out of which these checks could be paid.

On error to the Supreme Court.

For the plaintiff in error, *Wilbur A. Heisley.*

For the state, *Frederick F. Guild* and *Louis Hood.*

The opinion of the court was delivered by

BERGEN, J. The defendant was convicted in the Court of
Oyer and Terminer held in and for the county of Essex, of
the crime of conspiring, with others, to defraud the Roseville
Trust Company of its money and property. This judgment
was removed by a writ of error to the Supreme Court where

it was affirmed, and that judgment was brought here for review by virtue of a writ of error issued by this court. The printed case contains not only assignments of error, but specifications of causes for reversal based upon the provisions of sections 136 and 137 of the statute relating to criminal procedure. 2 *Comp. Stat., p.* 1816. We are of opinion that we cannot consider alleged errors contained in the specifications, and that the review must be confined to such assignments of error as are in support of the bill of exceptions sealed by the trial court, for the following reasons. It has been repeatedly held in this court, that if a party in a criminal case desires a review "of the entire record of the proceedings had upon the trial," such record must be authenticated by the certificate of the trial judge. *State* v. *Clark,* 75 *N. J. L.* 473; *State* v. *Lyons,* 70 *Id.* 635; *State* v. *Weber,* 77 *Id.* 580, and *State* v. *MacRae,* 83 *Id.* 796. The case last cited was affirmed by this court for the reasons given in the Supreme Court affirming the judgment of the trial court, one of them being that "the certificate fails to conform to the requirements of that act by stating that 'the entire record of the proceedings had upon the trial' are sent up." In the present case, no such certificate appears in the record. The only certificate of the trial judge concerning the record is his return to the writ of error directed to the Essex County Court of Oyer and Terminer. The writ commands the Court of Oyer and Terminer "if judgment be thereon given, then that you do distinctly and openly send under your seal the record and proceedings aforesaid with all things touching the same to our Supreme Court."

This command is in the precise words given, as a proper form of the common law writ of error (*Arch. Forms* 180), which only brings up the record relating to the judgment upon which errors may be assigned. What the trial court was commanded to do was to send up the record and proceedings and the judgment upon the indictment, and not "the record and proceedings had upon the trial," authenticated as we have repeatedly declared, by the certificate of the trial judge. To this writ of error the trial judge certified and

returned "the indictment, judgment of the court, together with all things touching and concerning the same and the entire record thereof as by the within writ to me directed I am commanded." This is merely a certificate that he has obeyed the command of the writ which did not require a return of "the record and proceedings had upon the trial." The practice which has grown up of printing the entire testimony instead of limiting it to the strict bill of exceptions, as formerly, does not extend the record to all the proceedings had at the trial. A return made to a writ of error of the "entire record" is confined to such record as the writ commands the court to return and does not include the entire proceedings had at the trial. If plaintiff in error desires such a return, he must procure its authentication by the certificate of the trial judge. This was not done in this case, and under the well settled rule in this state, specifications of causes for reversal have no place in this record and cannot be considered. We have dealt with this question at considerable length for the reason that, notwithstanding our numerous decisions concerning it, there still appears to be in the minds of some members of the bar a misconception of our utterances on this subject.

Turning to the questions raised by the assignments of error, an examination of the record shows that the defendant overdrew his account as a depositor with the Roseville Trust Company to a large extent by means of checks drawn against the trust company which were paid by Raymond Smith, the treasurer, and the two tellers, Jennings and Thompson, who were all indicted jointly with the plaintiff in error for conspiring to defraud the trust company. Smith pleaded *non vult* and was called as a witness for the state on the trial of the other alleged conspirators, the result of which was the conviction of the plaintiff in error and the acquittal of Jennings and Thompson.

The gist of the charge is, that the plaintiff in error combined and confederated with Smith to unlawfully obtain the moneys of the trust company by drawing checks on the company which were to be paid out of the funds of the company,

with the knowledge and connivance of Smith, although he
had no funds to his credit to meet them, thereby cheating
and defrauding the trust company to the extent of such over-
drafts. The first assignment of error argued is rested upon
the admission in evidence of the books of account of the trust
company kept under the direction of Smith, the alleged co-
conspirator, for the purpose of showing the amount of the
overdrafts, the legality of which is challenged upon the
ground that there was no direct evidence of the conspiracy.
Counsel for the appellant in error admits in his brief that if
there was any such evidence, either before or after the offering
of the books, plaintiff in error could not complain, and this
is undoubtedly the law, for it is well settled that any act
done by one of the conspirators in furtherance of the corrupt
agreement, and with reference to the common object is, in
law, the act of all. But proof of a conspiracy is not limited
to direct evidence thereof; it may be shown by circumstantial
evidence because from the very nature of the offence such a
corrupt bargain cannot, in most cases, be shown in any other
way. *State* v. *Thompson,* 69 *Conn.* 720; 38 *Atl. Rep.* 868.
This record shows that the plaintiff in error knew that his
account was largely overdrawn; that checks paid by order of
Smith were not charged to his account, and that on one oc-
casion he gave Smith a check for a large sum of money, to
meet which both he and Smith knew he had no funds on
deposit, for the purpose of taking up a number of smaller
checks which Smith had directed be paid, and which both
knew had never been charged to his account. All this was
done with the assistance and connivance of Smith. From
this and other joint acts of the plaintiff in error and Smith,
a jury might properly infer that there was an agreement be-
tween the two to cheat and defraud the bank, and in order
to avoid detection, checks which had been paid by the trust
company were not charged to the account of the plaintiff in
error.

A clearer case of a corrupt agreement to defraud by the
joint act of two persons, neither of whom could have carried
it out without the assistance of the other, is not often dis-

closed, and the record kept of the acts leading to its consummation by one of the conspirators was competent evidence against all, especially in a case like this where both parties knew that one of the means of carrying out the agreement, viz., the checks, were not charged, as they should have been, to the account of the plaintiff in error, and that the omission to do so tended to prevent the discovery of the wrong-doing. It is urged that the books were not correctly kept and therefore not competent evidence, but so far as the plaintiff in error is concerned, one of the elements of the crime is that, to his knowledge, his account was not debited with the unlawful overdrafts. It was an overt act in the execution of the corrupt bargain, and the books were competent to prove it.

The next assignment of error is based upon the overruling of a question asked of Charles Mindnick, a bookkeeper of the trust company, which was whether he did not know "as a matter of fact, that Smith, as treasurer, did not have notes of Armstrong (the plaintiff in error), that he did not have credit on." This was objected to upon the ground that it was not cross-examination, and the objection was sustained on that ground. This was manifestly correct as the witness had not testified, on his direct examination, concerning any notes held by the treasurer for which Armstrong had not had credit.

It is also urged, that it was error to permit Smith to testify that when Armstrong gave his check on the Roseville Trust Company for $2,776, to pay part of a note for $8,500, his account, not as it appeared on the books, but his true account, would have shown an overdraft of over $10,000, and that he knew that he had no funds to meet it. We see no error in this, but if otherwise, no exception was taken or sealed by the trial court and therefore it cannot be considered on this record.

Another assignment of error is based upon an instruction to the jury given under the following circumstances: After the jury had been considering the case two or three hours, it returned into court and submitted to the judge this ques-

tion, "Can the jury find a verdict as to two of the defendants and disagree as to the third?" The answer was, "Your verdict should settle the question of the guilt or innocence of each one of the defendants." The plaintiff in error claims that he was entitled to an instruction that the jury could disagree as to either or all of the defendants. We know of no rule of law which requires the court to instruct the jury that they may disagree; whether they disagree or not, depends upon the state of mind in which the evidence leaves them after giving it due consideration, for it is their duty to agree, if they can, and it would be introducing a novel rule if trial courts should be required, as a matter of law, to instruct juries that they may disagree. The agreement of a jury on their verdict depends upon the inferences they draw from the facts, to which they must apply the rules of law given them by the court. They are not presumed to disagree as to the law. There is no such thing as a legal right to disagree; that condition arises when there is a difference of opinion as to facts to be found in which no rule of law can control the jury. In this case, however, there was no exception sealed to the instruction, nor does the record show that any general exception to the charge was taken, and therefore the question is not properly presented.

The last point argued is, that the trial court erroneously dealt with a question asked of the witness Smith, who was one of the defendants in the indictment, he having pleaded *non vult* thereto, and also to twenty-four other indictments presented by the grand jury for matters arising in connection with his conduct of the business of the Roseville Trust Company, which was, "Have you been promised, or do you expect any consideration for your pleas entered on those charges?" The trial court limited the question to promises made to him, and excluded his expectations. No exception was taken or sealed to this ruling, and the question is only raised by one of the specifications of causes for reversal which cannot be considered because of the absence of a proper certificate, as explained in the earlier part of this opinion. We find no

error in so much of this record as is properly before us under exceptions taken and errors assigned thereon, and therefore the judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ.   13.

*For reversal*—None.