THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ERNEST ELLISON, PLAINTIFF IN ERROR.

Submitted May term, 1936—Decided July 28, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the defendant in error, *William A. Wachenfeld,* prosecutor of the pleas; *Felix Forlenza,* assistant prosecutor of the pleas, and *C. William Caruso,* legal assistant prosecutor.

For the plaintiff in error, *Sandmeyer & Meisner.*

BROGAN, CHIEF JUSTICE. The plaintiff in error, Ellison, was, together with Anthony V. Washkewich, convicted of

conspiracy to cheat and defraud Anna Rodanis of her money on deposit in the Howard Savings Institution in Newark, New Jersey. This writ of error is sued out only on behalf of Ellison.

The first ground upon which we are asked to reverse this judgment is that the trial court erred in refusing to direct an acquittal of Ellison on the ground that the state failed to prove the charge of conspiracy as laid in the indictment; that there was failure to prove any criminal intent; that the indictment charged an offense which was outlawed by the statute of limitations. It is also argued that the verdict was against the weight of the evidence.

Washkewich, at the time of the acts complained of, was a member of the bar of this state. Ellison was a detective and did investigating work from time to time for Washkewich.

The record discloses that one Anna Rodanis, in the year 1915, had an account in a savings bank in Newark, which bank later was taken over by the Howard Savings Institution. In 1918, this woman, having lost her mind, was confined in the Essex County Hospital for the Insane. Nothing was done about the account and the bank, in accordance with the statute concerning bank accounts that have long been idle and unclaimed, advertised this and other accounts as dormant.

It so happened that Washkewich knew a person by the name of Anna Rodanis (not the person who owned this bank account) and he caused her whereabouts to be investigated by one Wassell, an employe of his office. The Anna Rodanis that Washkewich knew had married a man named Moritz and both she and Moritz had died some time since, leaving two children. The mother of the deceased Anna Moritz, nee Rodanis, executed a renunciation of her right to administer the supposed estate of her deceased daughter and also signed a request that Wassell be appointed to administer the estate. Joseph, a brother of Anna (Rodanis) Moritz, having heard about this bank account and believing it to be the property of his deceased sister, made an investigation of the matter at the bank and learned that the account did not belong to his sister, Anna, but to another person of the same name. The

record in the bank disclosed that the depositor, Anna Rodanis, was a native of Russia while Joseph knew that his sister, Anna (Rodanis) Moritz, was born in the city of Newark. This fact he reported to Washkewich and told him to discontinue his effort to collect the moneys in this dormant account.

Wassell left the employ of Washkewich but in his place Ellison, on petition to the surrogate of Essex county, had himself appointed guardian of the two infant sons of the deceased Anna (Rodanis) Moritz. Subsequently letters of administration were issued to him. He had the fund of $660 transferred to his account as administrator and disbursed the same, receiving $25 for his services as administrator, turning the balance over to the two children of Anna (Rodanis) Moritz, from whom Washkewich obtained one-half of the fund for his services.

It is argued that there was no proof of conspiracy on the part of Ellison and that there was no overt act in furtherance of this conspiracy, nor any proof of guilty knowledge, and that the court should have directed an acquittal.

The rule on matters of this kind is elementary. If there is any proof whatever that would support a finding of guilty the matter is for the jury and a motion to direct an acquittal should be denied.

In support of the position that the state did not show guilty knowledge of, and participation in, this conspiracy by the plaintiff in error, it is argued that the testimony of Wassell was to the effect that he had never seen Ellison in the office of Washkewich.

The weakness of this argument is palpable. Wassell says, in the first place, that he, himself, only came to the office of Washkewich at intervals and, secondly, because there is little persuasion in this kind of negative testimony under these circumstances. It wasn't necessary for the state to prove that the conspiracy had been conceived and agreed upon in Washkewich's office. It may have been planned any place. It isn't requisite that a corrupt agreement be proved by direct evidence. Conspiracy may be proved by circumstance and

by subsequent overt act which admits of a legitimate conclusion that the person on trial was in fact a party to a conspiracy. This, however, is a matter for a jury to determine and in this case the matter was left to the jury. Was any unlawful act done by this plaintiff in error which made it a question for the jury as to whether he was an actor in the conspiracy? We think there was.

The case discloses that one of the exhibits offered by the state was signed by Ellison. This exhibit, dated February 19th, 1932, was an application made by him to the Howard Savings Institution for a new deposit book in place of one which he said was lost, destroyed, stolen or mislaid on or about the same date. It further states that he advertised the loss of the book in the press. An affidavit signed by Ellison was part of this application wherein he stated that he was the administrator of the estate of Anna Rodanis; that as such administrator he was the owner of a certain passbook, giving the number. He further swears that on or about February 19th, 1932, he lost the passbook in a manner unknown to him; that he searched for the same in every place where he thought it might be found; that he had been unable to find the same and had no idea as to its whereabouts, nor what had become of it; that he had not sold or pledged it in any way or parted with his right or interest in the book, and that he was still the unqualified owner of it and that the affidavit was made for the purpose of inducing the Howard Savings Institution to issue a new book in its place and stead, which was done.

Now this affidavit was false in fact. He had never owned the book; and never had it in his custody and, consequently, had never lost it. This statement was sworn to on May 2d, 1932. It also appears he made a statement, dated March 20th, 1934, to County Detective Meyer. Therein he says that he recalls that he made the affidavit of May 2d, 1932, and says that it was handed to him by Washkewich; that he signed it without realizing that it was an affidavit.

Ellison did not take the stand to testify. The inference is that he could neither truthfully deny nor explain the situa-

tion. *State* v. *Boccadoro,* 105 *N. J. L.* 352; 144 *Atl. Rep.* 612.

We are of the opinion that at the end of the state's case a motion for an acquittal was properly denied. We also conclude that the verdict was not contrary to the weight of the evidence.

It is next argued that the court committed reversible error in its charge to the jury. The language complained of is as follows: "Nor is it necessary to prove the conspiracy by direct evidence. It may be inferred from the circumstances, in fact, *from the nature of the case."* Plaintiff in error desires to take these few words which we have underscored and isolate them from the rest of the charge to make out error. If that were the rule to be applied to matters of this kind perhaps error could be made out, but if the entire charge is read, particularly the paragraph preceding the challenged words and the paragraph thereafter, it is clear that the court did not intend to convey to the jury that from the nature of the charge an inference of conspiracy might be reached. Direct evidence is impossible in many cases of conspiracy. Circumstantial evidence has been held by this court and by the Court of Errors and Appeals competent to prove conspiracy. In *State* v. *Armstrong,* 88 *N. J. L.* 280, 283; 95 *Atl. Rep.* 997, we find this language, "but proof of a conspiracy is not limited to direct evidence thereof; it may be shown by circumstantial evidence because from the very nature of the offense such a corrupt bargain cannot, in most cases, be shown in any other way. *State* v. *Thompson,* 69 *Conn.* 720; 38 *Atl. Rep.* 868."

We do not consider that there is any merit in this point.

The next ground for reversal is that the charge in the indictment is barred by the statute of limitations. The indictment was presented on April 25th, 1934. As has been pointed out above, the false affidavit was taken on May 2d, 1932, which is within the two-year period. If any overt act is committed within two years the statute runs from the time of such overt act.

The judgment of the court below will be affirmed.