(19 Misc. Rep. 292.)

## PEOPLE v. DUKE et al.

(Court of General Sessions, New York County. January, 1897.)

1. CONSPIRACY—OFFICERS OF CORPORATION—INDIVIDUAL LIABILITY.
   The officers and agents of a corporation are not, as regards their criminal liability, a single person in respect to corporate acts, and therefore they may be guilty of conspiracy therein.

2. MONOPOLIES—RESTRAINT OF TRADE—ARTICLES NOT OF PRIME NECESSITY.
   Monopoly of any lawful trade is against public policy, it not being essential that such trade should be in the necessities of life.

3. SAME—SPECIAL REGULATION OF TRADE.
   Pen. Code, § 290, prohibiting the sale of cigarettes to children under 16 years of age, is not such a complete special regulation of the cigarette trade as takes it out of the general prohibition against monopolies.

4. SAME—WHAT CONSTITUTES INTIMIDATION.
   Such intimidation of dealers as will render unlawful an attempt to secure their exclusive trade may be exercised by the refusal of a corporation controlling most of the cigarette output, and whose goods are necessary to profitable dealing in cigarettes, to sell to dealers except on condition that they handle no other cigarettes, and maintain excessive prices.

James B. Duke and nine others were indicted for conspiracy to commit an act injurious to trade and commerce, and they demur to the indictment. Disallowed.

John R. Fellows, Dist. Atty., and John D. Lindsay, Asst. Dist. Atty., for the People.

Joseph H. Choate and W. W. Fuller, for defendants.

FITZGERALD, J.     This indictment charges the defendants with the crime of conspiracy. It alleges that, at the time specified, they were officers and agents of a corporation called the American Tobacco Company; that they controlled, managed, and operated the said corporation; that the defendants and the corporation were engaged in the manufacture and sale of paper cigarettes; that the greater portion of the cigarettes manufactured and vended in the United States were made and vended by them; that it was impossible for wholesale dealers and jobbers in such line of business to profitably carry on their business without dealing in the cigarettes manufactured and vended by the defendants; that they (the defendants) and others conspired unlawfully to commit an act injurious to trade and commerce,—that is to say, to monopolize the entire business of making and vending cigarettes throughout the United States, and to exclude every other person from engaging in such business; to unlawfully raise the price of such cigarettes; to unlawfully and arbitrarily fix and maintain a standard price; to unlawfully prevent all wholesale dealers and jobbers in cigarettes from selling such cigarettes at a price less than such arbitrarily fixed standard; to unlawfully restrain and prevent competition in such business between and among themselves, also between and among themselves, on the one hand, and others; to limit, fix, and control the production, manufacture, and output of cigarettes, by conspiring to compel and force such dealers and jobbers to sell at arbitrarily fixed prices; to restrain them from selling below such prices; to coerce such jobbers and dealers to deal exclusively in defendants' cigarettes; to prevent them from dealing in the cigarettes of other manufactures, by means of refusing and threatening to refuse to sell such paper cigarettes to all dealers and jobbers who sold such paper cigarettes so bought at prices less than those arbitrarily fixed; to coerce, force, and compel such dealers and jobbers to deal exclusively in the cigarettes of the American Tobacco Company, by refusing to sell to all who dealt in cigarettes of any other manufacturer; to unlawfully fix and maintain, by unlawful agreement, the price of paper cigarettes made and vended by them, and so to limit and control the manufacture, production, and output of cigarettes in the United States. Two overt acts, in furtherance of this agreement, are then specifically set forth.

The first point submitted in support of the demurrer to this indictment is that the defendants are alleged to be the officers and agents of a lawfully established corporation, and that, as such, they must be considered as the fingers of one hand; that their acts are the acts of the corporation; that a corporation is but one person; and that, as the inevitable consequence of such reasoning,

44 N.Y.S.—22

an indictment for conspiracy cannot be maintained. I do not think that individuals can shield themselves from the consequences of wrongdoing by pleading that their wrongful acts were corporate acts. Civil liability is in many cases limited to the body corporate. The policy upon which corporate creation is founded rests largely upon the doctrine of limited liability. The vast advantages which have resulted to society from the magnificent achievements which corporate effort alone rendered possible are mainly attributable to this beneficent and wise rule of limitation. It has operated, undoubtedly, as a great inducement to the capitalist to risk part of his surplus in ventures to which he would be unwilling to commit himself if, by so doing, the entire amount of his accumulations were to be jeopardized. The fruits of its salutary operation abound upon all sides, and the preservation of our civilization may be truthfully claimed to largely depend upon its proper observance. But, in examining acts and agreements in the light of the fundamental principles of the criminal law, our reasoning must be guided by widely-different considerations, and we must not be led into error by construing the word "person," when it appears in criminal statutes, to have absolutely the same meaning as when construed by courts in determining issues which involved only questions affecting civil rights and remedies. The proposition is an obvious one that each of the penalties of the criminal law is directed against persons presumed to have capacity to commit the specific crime to which a prescribed penalty is attached. "A conspiracy consists in the unlawful combination or agreement of two or more persons to do an act unlawful in itself, or to do a lawful act by unlawful means." Oil Co. v. Everest, 30 Hun, 588. Section 168 of the Penal Code is but an embodiment of the common law. People v. Fisher, 14 Wend. 9.

We are thus confronted, at the outset, with the question: Could a corporation, in the contemplation of the common law, ever have been one of the two or more persons whose guilty agreement constituted at common law the offense of conspiracy? It is true that a corporation has power to make contracts, but its power to do so is limited "to such contracts as were either expressly allowed in its charter, or fairly to be implied from the language used." Dwight, Persons, 367. By various devices, changed from time to time by statute or by judicial declaration, the assent of the artificial person—which is one of the essential elements of a valid contract—is presumed, under certain circumstances, to have been given. Resort to legal device is necessary to uphold contracts to which a corporation is a party; otherwise, corporations would be incapable of the slightest undertaking. But no such rule or reasoning can be invoked to supply the elements of criminal intent, which is one of the material elements of conspiracy, and generally of all crimes. There are some acts for which indictments will lie against corporations. These acts have, I think, been so far limited to acts of misfeasance and of nonfeasance. But, in so far as crime generally is concerned, the artificial person, called the "corporation," cannot be held to have capacity to commit it. If, then, a corpora-

tion has not the power to conspire, the corporate acts of a dozen corporations could not form the basis of an indictment for conspiracy. Are, then, the individuals composing the corporation, its officers and agents, to have immunity for their unlawful acts? Such has never been the policy of our law. Cowley v. People, 83 N. Y. 464. Of course, upon proof of unlawful acts, it could not be held that all the members composing the body corporate are criminally liable. On the contrary, their association being a lawful one, no presumption can arise against any of them from the fact of such association. But, if two or more or all of such persons enter into an unlawful agreement, they cannot be allowed to plead their lawful association for certain purposes, in bar of prosecution for unlawful combination. To rule that the officers and agents of a corporation are relieved from individual criminal liability for all they may do under the color of corporate acts would amount, in many cases, to a practical suspension of the law. The equal protection of the laws is the mandate of the constitution. Const. U. S. Amend. art. 14, § 1. This provision has been construed to mean the protection of equal laws. Yick Wo v. Hopkins, 118 U. S. 358, 6 Sup. Ct. 1064. Assuredly, one of the tests by which the equality of a law must be measured is the equality of the punishment it prescribes against violators. The penalty within the discretion of the court to be imposed upon a conviction of the offense under consideration may be a fine or imprisonment, or both. A corporation may be fined; it cannot be imprisoned. Suppose that the officers and agents of two corporations conspired to commit an act injurious to trade and commerce, and that defendants' contention was allowed, —that the corporations, and not the individuals, were the persons liable. The extreme penalty incurred by each of the artificial persons would only be a fine. Thus, the extent of the punishment to which the conspirators (the individuals) would render themselves liable would be the inconsiderable sum charged proportionately among them as stockholders of an additional item of expense, to pay such fine as the court, under the circumstances, might impose, not to exceed $500. How unequal, under such a view of the law, would the position be of individual conspirators, who were officers and agents of a corporation, to the position of other individual conspirators? As well might it be claimed that the law would authorize the formation of a corporation for unlawful purposes as to contend that the unlawful acts of incorporators are protected by the fact of incorporation. There are many cases where corporations and their agents, directors, and officers have been held to be concurrently liable; but the question before the courts on such occasions has been, not as to the liability of the individuals, but as to the liability of the corporation. Rex v. Medley, 6 Car. & P. 292; Reg. v. Birmingham & G. Ry. Co., 3 Q. B. 223; Reg. v. Great North of England Ry. Co., 9 Q. B. 315; State v. Morris & E. R. Co., 23 N. J. Law, 269.

The next point contended for is that the acts charged against defendants are not within the prohibition against restraint of trade upon the grounds of public policy, for the reason that the business

of defendants does not relate to articles of prime necessity, or, in other words, the necessaries of life. The weight of recent authority seems to support the proposition that the character of the trade sought to be monopolized is of no concern as long as it be a lawful one. Wire-Cloth Case (Com. Pl.) 14 N. Y. Supp. 277; Hoffman v. Brooks, 11 Wkly. Law Bul. 258. And, in so far as tobacco is concerned, the exhaustive opinion of Judge Earl in Re Jacobs, 98 N. Y. 98, concludes discussion upon the subject.

Neither do I think that section 290 of the Penal Code, which prohibits the sale of cigarettes to children under the age of 16 years, should be construed so sweepingly as to hold that it takes the entire trade out of the prohibition against monopolies. It is merely a regulation, under the police power of the state, upon a subject affecting the health and morals of children, and does not excuse any attempted imposition by means of illegal combination. Nestor v. Brewing Co. (Pa. Sup.) 29 Atl. 102.

It is further claimed that, because defendants are directors and agents of a private corporation, they had a perfect right to do all of the acts alleged against them. A very wide latitude must, indeed, be accorded to the managers of a vast private enterprise, lawfully organized, and it is exceedingly difficult to fix the bounds beyond which they may not lawfully go. They are certainly entitled to reap all the advantages which skill, experience, large investment, enterprise, and splendid facilities afford them over less favorably equipped competitors; and if, by such means, vast trade is attracted, to the detriment of mere business rivals, it would be difficult to see how injury to the public could arise. The principle established by the adjudged cases appears to be that, where actual or possible public injury does not arise from the business methods of individuals or corporations, the natural law of supply and demand may be depended upon to protect the public welfare. Every person may have the right to do as he pleases with his own property, but he must exercise that right in such manner as not to injure the property of others. Kent, in his Commentaries (page 340, vol. 2), says that "every person ought so to use his property as not to injure his neighbors, and that private interests must be made subservient to the general interests of the community." A trading corporation is entitled to all the advantages it can secure under fair and free competition, but its officers and agents may become criminally liable if they confederate to secure a monopoly by threats and menaces directed against competitors, to force and coerce them to relinquish the rights to the fullest enjoyment of which all are entitled. The case of Mogul S. S. Co. v. McGregor, 21 Q. B. Div. 544, 23 Q. B. Div. 598, and [1892] App. Cas. 25, so frequently referred to in defendants' brief, does not go any further than to say that inducements in the shape of profitable offers to customers, to secure their exclusive trade, are not unlawful; and the extent of the rule laid down in Lough v. Outerbridge, 143 N. Y. 171, 38 N. E. 292, seems to be that, as long as common carriers charge reasonable rates to all, they are not prohibited from making special lower rates upon conditions in specific

instances. Mr. Justice Barrett, in People v. Wilzig, 4 N. Y. Cr. R. 414, says, substantially, that "it is error to suppose that threats must be actually uttered, but that men may be guilty of intimidation, though they raise not a finger and say not a word. Their attitude may, nevertheless, be one of menace. They may intimidate by their methods, their devices." If, then, the proof in the case at bar should establish the allegations of the indictment, might not the refusal to sell to jobbers and dealers except upon the required conditions be properly found to constitute menace, coercion, and intimidation? And if such methods or devices were resorted to by defendants to restrain lawful trade and commerce, and create a monopoly, are they not guilty of conspiracy?

Demurrer disallowed, with leave to defendants to plead over.