[Crim. No. 96.   Third Appellate District.—January 22, 1910.]

## THE PEOPLE, Respondent, v. SACRAMENTO BUTCHERS' PROTECTIVE ASSOCIATION, WESTERN MEAT COMPANY et al., Defendants; J. O'KEEFE, Appellant.

CRIMINAL LAW — VIOLATION OF "ANTI-TRUST LAW" — MOTION TO SET ASIDE INFORMATION.—An information charging the violation of the anti-trust law (Stats. 1907, p. 294), cannot be set aside on the ground of an immaterial variance between the information and the offense charged in the complaint before the magistrate, nor on the ground that the complaint and evidence before the magistrate was insufficient to warrant the commitment.

ID.—CONSTRUCTION OF PENAL CODE—GROUNDS FOR SETTING ASIDE INFORMATION.—Under the familiar rule of construction, *expressio unius est exclusio alterius,* a trial court cannot set aside an information on any other grounds than those specified in section 995 of the Penal Code, viz.: "1. That before the filing thereof the defendant had not been legally committed; 2. That it was not subscribed by the district attorney."

ID.—INSUFFICIENCY OF EVIDENCE — PRESUMPTION.—Assuming that the evidence before the magistrate was altogether insufficient to establish probable cause for believing that the offense for which the defendant moving to set aside the information was examined and held had been committed or that he committed it, that question cannot be urged and decided on such motion. But upon the filing of the information corresponding to the commitment, the presumption arises that the evidence on which the commitment was predicated was in all respects sufficient to justify the magistrate in making the order.

ID.—COMMITMENT BASED UPON DEPOSITIONS—NATURE OF COMPLAINT.— The complaint is in the nature of a deposition on which the warrant of arrest is based, and not a complaint in the sense that it is a pleading. The commitment is based upon the depositions as such, and not upon the complaint only. If the commitment does not of itself describe the offense, but refers to the depositions, they must describe the commission of the offense to which the commitment refers, though the finding of the magistrate as to the sufficiency of the evidence to sustain the offense is conclusive.

ID.—COMPLAINT NOT A PART OF ORDER OF COMMITMENT.—The complaint upon which the warrant of arrest is based cannot properly be deemed a part of the order of commitment which is based upon the depositions taken at the preliminary examination.

Id.—Absence of Variance Between Complaint and Information.— If the complaint be deemed a deposition to which the commitment refers, there is no material variance between the offense charged in the information and that stated in the complaint. That deposition states an offense under the provisions of the anti-trust law against the personal defendant. While the offense is more fully and clearly stated in the information—a requisite strictly applied to criminal pleading, but not to depositions taken before a magistrate—the offense charged in both documents is one and the same, and for the violation of precisely the same provisions of the law.

Id.—Order of Commitment—Indorsement upon Depositions not Essential to Information.—The order of commitment is not required to be indorsed upon the depositions, as a condition of the authority of the district attorney to file an information.

Id.—Entry of Order upon Docket Sufficient.—The order holding a defendant to answer is in fact and in law made when it is entered upon the docket of the justice, and the failure to indorse the same upon the complaint or depositions in no manner deprives the order of its validity or affects any substantial right of the defendant.

Id.—Sufficiency of Information—Violation of Anti-trust Law— Combination to Enhance Price of Meat.—An information substantially charging a violation of the anti-trust law in the language of the statute, and accusing the personal defendant and the Western Meat Company, of which he is the managing agent, of having entered into a combination and conspiracy with the Sacramento Butchers' Protective Association and other persons, for the purpose of destroying free and full competition in the meat business, and in requiring a meat dealer named to pay a higher price for meat than was charged to members of the combination, states an offense under that law.

Id.—Averment and Proof of Control of Market not Essential.— It is not necessary either to allege or prove that the defendants or either of them, or any of the persons referred to in the information as being connected with the alleged combination, were in a position to control the market in the sale and purchase of the commodity to which the charge relates.

Id.—Purpose of Anti-trust Law.—The purpose of the anti-trust law is to prevent such business combinations as will result in restrictions in trade or commerce, or will prevent competition in the manufacture or sale of merchandise and other commodities for domestic use.

Id.—Identity of Members of Butchers' Protective Association.— Where the Sacramento Butchers' Protective Association, as such, is made a defendant in the information without reference to the members composing it, the information is not rendered defective by describing them as "certain and divers persons, firms, partnerships, corporations and associations of persons constituting and compris-

ing the Sacramento Butchers' Protective Association, whose names are unknown, with whom it is alleged that the personal defendant entered into an unlawful combination and conspiracy. This was sufficient so to identify such persons as to apprise defendant appealing of the particular persons with whom he is charged with having been in league in the maintenance of an unlawful conspiracy.

ID.—PARTIES TO CONSPIRACY.—Where conspiracy is charged, it is not necessary to make all the alleged conspirators defendants in order to maintain a prosecution against one.

ID.—GIST OF OFFENSE — COMBINATION WITH OTHERS — PERSONS UNKNOWN.—The gist of the offense is in the formation of the combination with others to do some unlawful act, and where the information charges a party with having entered into a conspiracy with others not made defendants, it is sufficient to refer to the latter in the accusatory pleading as "persons unknown."

ID.—PLEADING—ACTION OF MANAGER AND OF MEAT COMPANY—DEFENSE. Where the information with clearness charges that appellant, as manager and agent of the Western Meat Company, and said company itself entered into the alleged combination and conspiracy with the Butchers' Protective Association and the members thereof, for the purposes of the information, the showing therein is sufficient to connect both the company and its manager therewith. The alleged act of the agent must be deemed that of the company, and cannot be presumed to be without its knowledge or assent. If he in fact exceeded his authority in entering into the conspiracy, that would be matter of defense for the meat company.

ID.—PROPER JOINDER OF CORPORATION AND MANAGER.—Upon principle, and in furtherance of sound policy, both corporations and their officers and agents who engage in the conspiracy must be held to be parties thereto, and it was proper to join both the Western Meat Company and its manager in the information.

ID.—DATES OF EXECUTION OF CONSPIRACY NOT FIXED—PROBATIVE FACTS—SURPLUSAGE.—The information is not rendered insufficient because the dates upon which the acts of the alleged conspirators committed in the prosecution of such conspiracy occurred are not definitely stated and fixed in the information. The acts constituting the actual accomplishment of the object or purpose of the combination and conspiracy constitute mere probative facts of its existence, the dates of which would be matter of surplusage, and need not be alleged.

ID.—NATURE OF OFFENSE UNDER ANTI-TRUST LAW — MISDEMEANOR—LIMIT OF PENALTY—EXCLUSIVE JURISDICTION OF SUPERIOR COURT.—If the nature of an offense under the anti-trust law be deemed a misdemeanor, the limit of imprisonment being one year, without prescribing the place of imprisonment, and the limits of the fine being not more than $5,000 and not less than fifty dollars in all county seats in which the police court has no jurisdiction of such

maximum fine, the jurisdiction of the superior court under the constitution of all misdemeanors not otherwise provided for is exclusive under the anti-trust law.

ID.—TEST OF CHARACTER OF CRIME.—The test of the nature of a crime as a felony or misdemeanor is not the characterization of it as one or the other, but the nature and mode of punishment of the crime is the sole test. The question is not decided whether the superior court has power to imprison the defendant in the state prison for the year provided for in the statute, the supreme court having expressly limited its penalty to that of a misdemeanor.

ID.—JURISDICTION OF JUSTICES' COURTS EXCLUDED.—All justices' courts being expressly limited in their jurisdiction to misdemeanors not exceeding $500 or imprisonment not exceeding six months in the county jail, their jurisdiction under the anti-trust law is excluded.

ID.—SUPPORT OF VERDICT—CONFLICTING EVIDENCE.—Where the evidence is conflicting, the verdict of the jury adjudging the appellant guilty of the crime charged against him cannot be disturbed where there was evidence tending to establish the truth of the charges against him.

ID.—EVIDENCE—ABSENCE OF DISCRIMINATION AS TO SMOKED MEATS HARMLESS RULING.—Where the sole charge was discrimination as to fresh meats against the Butchers' Protective Association, evidence that they made no discrimination as to smoked meats not under their control, if its object and purpose was to corroborate the charge, was not erroneous, but if such was not its object and its admission was erroneous, the error was not prejudicial.

ID.—BY-LAWS OF BUTCHERS' PROTECTIVE ASSOCIATION.—The court properly admitted the by-laws of the Butchers' Protective Association not only to disclose the identity of its members, but also to show the nature and purposes of the association, and the object of its connection with the Western Meat Company, and so far as tending to show the criminal conspiracy, and if there was no relevancy in either of these respects, their admission was harmless.

ID.—PROPER CROSS-EXAMINATION OF MEMBERS OF ASSOCIATION—CONTRIBUTION OF MONEY FOR COUNSEL FOR APPELLANT.—The court properly allowed members of the association who testified for the defendant to answer questions by the cross-examiner as to whether they contributed money toward counsel for the defendant appealing.

ID.—INSTRUCTIONS—CIRCUMSTANTIAL EVIDENCE OF CONSPIRACY.—Instructions by which the jury were told that the crime of conspiracy could be proved by circumstantial as well as by direct evidence were perfectly proper.

ID.—FORMATION OF CONSPIRACY.—*Held,* that an instruction in regard to the formation of a conspiracy, which, in effect, and with reasonable clearness, declared to the jury that it is immaterial how or in what manner it is formed, so long as it sufficiently appears

from the evidence to be formed for an unlawful purpose, is not erroneous.

Id.—Instruction as to Conviction Based on Evidence.—An instruction as to conviction based on evidence of discrimination in sale of fresh meats, to the effect that if the jury should find from the evidence in the case that there was a discrimination in the price charged for fresh meats, so as to charge a higher price to those not members of the combination, to which the defendant was a party, they should convict the defendant, was proper.

Id.—Untenable Objections to Anti-Trust Law.—The anti-trust law is not incompatible as to any provision of the constitution, nor with section 182 of the Penal Code relative to the subject of conspiracies. The unlawful combination here involved is made to apply to a different object from any mentioned in the code.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial. C. N. Post, Judge.

The facts are stated in the opinion of the court.

L. T. Hatfield, James B. Devine, and Jesse W. Lilienthal, for Appellant.

U. S. Webb, Attorney General, J. Charles Jones, Eugene S. Wachhorst, District Attorney of Sacramento County, and Frank F. Atkinson, Assistant District Attorney, for Respondent.

HART, J.—The defendant, O'Keefe, was convicted of violating certain provisions of an act of the legislature of 1907 ·(Stats. 1907, p. 984, c. 530), entitled: "An act to define trust and to provide criminal penalties and civil damages, and punishment of corporations, persons, firms and associations, or persons connected with them, and to promote full competition in commerce and all classes of business in the state."

This appeal is by O'Keefe from the judgment and the order of the trial court denying him a new trial.

The information charges that the appellant, as the managing agent of the Western Meat Company, and said company, in pursuance of a combination and conspiracy into which they had previously entered with the Sacramento Butchers' Pro-

tective Association and the individual members thereof, to execute and carry out certain contracts and agreements, the effect of the execution of which would be to destroy free competition in the retail meat business in said city of Sacramento, required and compelled one Albert Robinson, who was engaged in carrying on the retail meat business in said city, to pay to the appellant and said Western Meat Company higher prices for meats than the appellant and said company required the members of said Butchers' Protective Association, each of whom was likewise engaged in the retail meat business, to pay for the same class or character of meats.

The refusal of the court to grant appellant's motion to set aside the information, the order overruling the demurrer to the information, insufficiency of the evidence to justify the verdict, alleged errors in admitting and rejecting certain evidence, alleged erroneous instructions given to the jury, and want of jurisdiction in the superior courts of criminal prosecutions under the act upon the provisions of which the information here is based, are the general reasons upon which a reversal of the judgment and the order is urged.

The act concerned here is what is commonly known as the "Cartwright Anti-Trust Law," and, as its title and provisions clearly indicate, its purpose is to prevent such business combinations as will result in restrictions in trade or commerce, or, in other words, in the destruction of free competition in the manufacture, sale and purchase of merchandise and other commodities for domestic use.

Section 1 of said act reads, in part, as follows:

"Section 1. A trust is a combination of capital, skill or acts by two or more persons, firms, partnerships, corporations or associations of persons, or by any two or more of them for either, any or all of the following purposes: 1. To create or carry out restrictions in trade or commerce. . . . 3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity. . . . "

1. The order denying the motion to set aside the information was proper.

The grounds of the motion, stated in general language, are: That the defendant had not been legally committed by a magistrate; that the alleged offense set forth in the in-

formation is not the offense stated in the "complaint" filed
in the magistrate's court, in that the offense sought to be
charged in said complaint is a misdemeanor, while the in-
formation purports to charge a felony, and further, that
the "complaint" does not charge the alleged offense to have
been committed against any particular person, while the in-
formation charges that the purported offense alleged therein
was against one Albert Robinson; "that no order has been
indorsed on the complaint holding defendant, O'Keefe, to
answer to the charge contained in said complaint"; that no
evidence was adduced before the magistrate authorizing the
order holding O'Keefe to answer to the charge alleged in
the "complaint." In addition to these, the motion advances
some other grounds upon which it is claimed the informa-
tion should be set aside, but they are not, in our judgment,
of sufficient importance to require special notice.

The only grounds specified by the code upon which, upon
a proper showing, a trial court is authorized to set aside an
information are the following: "1. That before the filing
thereof the defendant had not been legally committed by a
magistrate; 2. That it was not subscribed by the district at-
torney of the county." (Pen. Code, sec. 995.)

Under the familiar rule of construction, *expressio unius
est exclusio alterius,* a trial court is without jurisdiction to
entertain or to grant a motion to set aside the information
upon any ground other than those expressly specified in the
designated section of the Penal Code. Assuming, therefore,
that the evidence presented to the magistrate was altogether
insufficient to establish probable cause for believing that the
offense for which the defendant was examined and held had
been committed, and that he committed it, that question could
not properly be urged and decided on a motion of the char-
acter of the one under consideration. Upon the filing of an
information corresponding with the terms of the commit-
ment as to the nature of the offense indicated in the lat-
ter, the presumption at once arises that the evidence of
which said commitment is predicated was in all respects suf-
ficient to justify the magistrate in making the order (*West-
ern Meat Co.* v. *Superior Court,* 9 Cal. App. 538, [99 Pac.
976]), and, as the attorney general has very clearly pointed
out in his brief, if the evidence taken before the magistrate

was not sufficient to warrant the order of commitment, that question should have been inquired into and determined through some other proceeding than a motion to set aside the information. (*People* v. *Beach*, 122 Cal. 37, [54 Pac. 369] ; *People* v. *Lee Look*, 143 Cal. 219, [76 Pac. 1028] ; *Redmond* v. *State*, 12 Kan. 172; *People* v. *Cole*, 127 Cal. 549, [59 Pac. 984] ; *Ex parte Dimmig*, 74 Cal. 164, [15 Pac. 619].)

The point sought to be made by the appellant that there is a variance between the allegations of the "complaint," so-called, and those of the information, cannot be maintained. The instrument upon which the warrant of arrest is authorized to be issued by a magistrate in the case of an indictable offense is not a "complaint" in the sense that it is a pleading, but is practically a deposition only, setting forth the facts stated by the informant, sufficiently showing the commission of an offense and its perpetration by the defendant to justify the issuance of a warrant of arrest by the magistrate. (Pen. Code, secs. 811, 812.) The commitment is based upon all the depositions and not alone upon the so-called complaint, and the information is in turn founded upon the order of commitment. It is true that the order of commitment in the case at bar does not itself specifically designate or describe the offense for which the defendant was held, declaring only "that the offense in the within depositions mentioned has been committed," and it is, of course, also true, in the absence of a specific description in the order of commitment itself of some offense of which the superior court has jurisdiction, referring therein to the alleged crime for which the accused is ordered held under its generic description only, that if the depositions do not show the commission of the offense to which the commitment refers, or, showing it, do not disclose probable reason for the defendant's connection with its commission, then the commitment is without a prop to uphold it. But, as stated, the presumption prevails, on a motion to set aside an information, that the evidence or depositions taken by the magistrate sufficiently show that the offense mentioned in the commitment was committed by the defendant. In other words, as we have shown, upon such a motion as the one now under examination, the superior court cannot review and over-

rule the finding of the magistrate that the evidence taken before him was sufficient. (*People* v. *Beach,* 122 Cal. 37, [54 Pac. 369]; *People* v. *Lee Look,* 143 Cal. 219, [76 Pac. 1028]; *People* v. *Sehorn,* 116 Cal. 507, [48 Pac. 495]; *People* v. *Cole,* 127 Cal. 549, [59 Pac. 984].)

If, however, the contention is that the so-called "complaint" or the deposition upon which the warrant was issued is necessarily made a part of the order of commitment by appropriate and sufficient words of reference, and, as thus viewed, the commitment designates or describes a distinctly different offense from that alleged in the information, thereby vitiating the latter (*People* v. *Nogiri,* 142 Cal. 596, [76 Pac. 490]), it is clear that the point is not well taken. Said deposition, in our opinion, states an offense under the provisions of the anti-trust law against the defendant, and, while perhaps such offense is more fully and clearly stated in the information—a requisite strictly applied to criminal pleadings but not to depositions before a magistrate—the offense charged in both documents is one and the same and for the violation of precisely the same provisions of the law. (*Redmond* v. *State,* 12 Kan. 172; *People* v. *Lee Look,* 143 Cal. 219, [76 Pac. 1028].) No authority has been cited, and, indeed, none can be found, holding, even where the commitment itself undertakes to describe the offense for which a defendant is held for trial upon a felony charge, that such offense must be stated therein with the technical nicety and precision required in an indictment or an information, and if the deposition upon which the warrant of arrest was issued in this case is to be treated as a part of the order of commitment (and certainly it cannot be so regarded), the inartificiality of its allegations or its insufficiency in stating with technical accuracy the offense for which the defendant was ordered committed (if these shortcomings could truly be attributed to it), cannot be the basis of a motion to set aside the information, if the latter charges the same offense.

It is further claimed that the district attorney was without authority to file the information because the order of commitment was not indorsed on the "complaint" or upon any of the other depositions taken by the magistrate. But the point is without merit. (*People* v. *Wilson,* 93 Cal. 377, [28 Pac. 1061]; *People* v. *Wallace,* 94 Cal. 499, [29 Pac. 950]; *People* v. *Tarbox,* 115 Cal. 57, [46 Pac. 896].)

In *People* v. *Wallace, supra,* the court says: "When, as a result of an examination, such an order has in fact been made and entered upon the docket of the justice, it would seem that no further action upon his part is necessary in order to authorize the district attorney to file an information against a defendant for the offense named in the order; citing *People* v. *Wilson,* 93 Cal. 377, [28 Pac. 1061]. The law requires the justice to keep a docket in which must be entered each action, and all proceedings therein (Pen. Code, sec. 1428); and we are of opinion that an order holding a defendant to answer is in fact and in law made when it is entered upon the docket of the justice, and the failure to indorse upon the complaint or the depositions taken in no manner deprives the order of its validity, or affects any substantial right of a defendant."

2. The information substantially follows the language of the statute, and clearly states an offense under said statute. Briefly stated, the information accuses the defendant and the Western Meat Company (a corporation), of which he is the managing agent in the city of Sacramento, of having entered into a combination and conspiracy with the Sacramento Butchers' Protective Association and other persons, whose names are alleged to be unknown, for the purpose of destroying full and free competition in the retail meat business, by entering into and carrying out "contracts and understandings" made in furtherance of such combination and conspiracy, and as the result thereof, and in the execution of said combination and conspiracy, sold to one Albert Robinson, a dealer in meats in said city of Sacramento, certain meat at a higher price than said O'Keefe, as agent of and for said company, sold the same class of meat to other persons, composing said association, and that by reason of said "compacts and understandings, plans and schemes," so carried out by said alleged conspirators, said Robinson was compelled to, and did, pay to said company a higher price for meat purchased by him of the company than was paid by said other persons, constituting the said Butchers' Protective Association; that because of said agreement, compacts, plans and schemes, so executed and carried out by said company, said O'Keefe and said association, and the members of said association, said alleged conspirators did then and there cre-

ate and carry out "restrictions in trade, and directly and indirectly preclude a free and unrestricted competition among the persons, firms, partnerships and associations of persons constituting and composing the said Sacramento Butchers' Protective Association and other persons, purchasers, consumers and dealers in the buying and selling of such article and commodity of merchandise, produce and commerce, to wit, meat," etc.

It will thus be observed that the information is, as we have already stated, substantially in the language of the statute, and, while the rule that an offense may properly be stated in the language of the statute defining such offense cannot be uniformly followed, it is in our opinion applicable in this case. We cannot conceive of any other elements which could be required to be alleged in order to state an offense under the first and third subdivisions of section 1 of the anti-trust law than those involved in the allegations of the information here. If the evidence shows, as the information clearly charges, that the defendants had entered into and formed a combination by the terms of which members of the Sacramento Butchers' Protective Association were privileged to purchase meat from the Western Meat Company at prices lower than those at which other persons engaged in the retail meat business were to be allowed to purchase such meat, thus practically confining the business of selling meat at retail to those only who were fortunately members of said association, then a plain and palpable violation of not only the spirit, but of the letter, of the statute is disclosed. It was not necessary, as counsel for appellant contend, to allege in the information that the meat company, the defendant O'Keefe and the Butchers' Protective Association were in a position to control the market with respect to meat. As we have stated, the object of the statute is to prevent such combinations or conspiracies between persons engaged in a particular line of business as will destroy free competition therein, and if the purpose of such combination is to restrict trade or destroy competition in the sale and purchase of "merchandise, produce, or any commodity," or if such combination tends to restrict trade or to prevent free competition therein, such combination is against the letter and paramount object of the law. It is,

12 Cal. App.—31

therefore, not necessary to prove, and much less to allege in the information in order to state the offense denounced by the statute, that the defendants or any of the persons referred to in the information as being connected with the alleged combination were in a position to control the market in the sale and purchase of the commodity to which the charge relates.

As is said by the supreme court of Missouri, in the case of *State* v. *Armour Packing Co.,* 173 Mo. 390, [96 Am. St. Rep. 515, 73 S. W. 653], "the gravamen of the offense of conspiracy is the combination. Agreements to prevent competition in trade are, in contemplation of law, injurious to trade, because they are liable to be injuriously used. . . . If agreements and combinations to prevent competition in prices are, or may be hurtful to trade, the only sure remedy is to prohibit all agreements of that character."

In *United States* v. *E. C. Knight Co.,* 156 U. S. 16, [15 Sup. Ct. Rep. 255], Chief Justice Fuller, speaking for the court, says: "Again, all the authorities agree that, in order to vitiate a contract or combination, it is not essential that its result shall be a complete monopoly. It is sufficient if it really tends to that end, and to deprive the public of the advantages which flow from free competition." (See *State* v. *Slutz,* 106 La. 182, [30 South. 298]; *State* v. *Thompson,* 69 Conn. 720, [38 Atl. 868]; *United States* v. *McAndrews,* 149 Fed. 836; *Bailey* v. *State,* 42 Tex. Cr. 289, [59 S. W. 901].)

It is further objected that the information is deficient in that it fails to disclose the identity of the persons referred to therein as "certain and divers persons, firms, partnerships, corporations and associations of persons constituting and composing said Sacramento Butchers' Protective Association, the names of whom are unknown except as herein stated," etc. The further contention is made that it does not appear from the information but that O'Keefe acted in the transactions with Robinson independently and without the knowledge and sanction of the Western Meat Company.

Neither of these propositions can be sustained. We have seen that the rule of criminal pleading is that the offense may be stated in the language of the statute if the latter fully and clearly describes the offense denounced as such by

its provisions.  There is nothing wanting in the language of the law under which the appellant was prosecuted and convicted to fully and accurately define the offense sought to be described therein.  The information directly charges that the "persons, firms, partnerships," etc., whose names are alleged to be unknown, are members of the Sacramento Butchers' Protective Association, with which, it is further alleged, the appellant was connected in the inauguration and prosecution of the combination and conspiracy which the statute declares that it is unlawful to maintain.  This was sufficient to so identify such persons as to apprise the appellant of the particular persons with whom he is charged with having been in league in the maintenance of an unlawful conspiracy.

In *State* v. *Slutz,* 106 La. 182, [30 South. 298], it is said: "It is equally true that all the conspirators, whether known or unknown, need not be prosecuted at the same time, but an indictment charging a person known with having a conspiracy with *other persons unknown* or with other persons whose names are given, but who are not joined as defendants, is good."  (See 4 Ency. of Pl. & Pr., 709, 710; 8 Cyc., p. 663, note 99; *State* v. *Thompson,* 69 Conn. 720, [38 Atl. 868].)

In other words, where conspiracy is charged, it is manifestly not necessary to make all the alleged conspirators defendants in order to maintain a prosecution against one.  The gist of the offense is in the formation of the combination with others to do some unlawful act, and where the information, as here, charges a party with having entered into such a conspiracy with others, not made defendants, it is sufficient to refer to the latter in the accusatory pleading as "persons unknown."  The "persons, firms, partnerships," etc., thus referred to in the information in the present case are not made defendants as individual persons, but only so in so far as they constitute in the aggregate the Sacramento Butchers' Protective Association.

The information with clearness charges that O'Keefe, as manager and agent of the Western Meat Company, and said company itself, entered into the alleged combination and conspiracy with the Butchers' Protective Association and the members of said association.  There is, therefore, no merit

in the contention that, for aught that appears to the contrary from the allegations of the information, O'Keefe's alleged part in the conspiracy charged was without the knowledge or indorsement or assent of the company of which he was agent. If, as *agent* of the company, he joined the conspiracy, then certainly his act was that of the company, for the company acted through him, and his act attached to and became that of the company, as the act of a person actually committing a murder necessarily attaches to another who had been in the conspiracy to commit the murder, but who himself did no physical act toward the consummation of the object of the conspiracy. For the purposes of the information, the showing therein was sufficient to connect both the company and O'Keefe. But if, by becoming a member of the conspiracy, O'Keefe acted in excess of his authority as such agent, it then became a matter of defense for the meat company that he had thus exceeded his authority or acted in the premises without its knowledge or sanction.

In the case of *Standard Oil Co.* v. *State,* 117 Tenn. 618, [100 S. W. 705], where the company and its agent were jointly indicted under the anti-trust law of Tennessee, the supreme court of that state uses the following language: "We are of the opinion that, independent of statute, upon principle and in furtherance of sound public policy, both corporations and their officers and agents, who engage in the conspiracy, must be held to be parties to it, and be counted in computing the necessary number to constitute it. There are respectable authorities which tend to this conclusion"; citing *People* v. *Duke,* 19 Misc. Rep. 292, [44 N. Y. Supp. 336]; *Samuels* v. *Oliver,* 130 Ill. 73, [22 N. E. 499]; Eddy on Corporations, sec. 362. (See, also, *United States* v. *McAndrews,* 149 Fed. 823.)

There is no substantial ground upon which the information may be held to be insufficient because the dates upon which the acts of the alleged conspirators, committed in the prosecution of such conspiracy occurred are not definitely stated and fixed in the information. While in no manner vitiating the information, there was, in our opinion, no real necessity for alleging the acts constituting the actual accomplishment of the object or purpose of the combination or conspiracy. They constitute mere probative facts, since

the gist of the crime of conspiracy is in its formation for an unlawful purpose, and, therefore, the averments of the information with reference to the times at which such acts were committed may be treated as surplusage. In other words, the legislative power of the government very properly treated combinations formed for the purpose of restricting trade or for any other unlawful purpose very much in the light in which a loaded gun is regarded—a dangerous instrument to be lying around loose—and upon the same principle which sustains local legislative measures declaring it to be a misdemeanor for one to have in his possession burglarious tools and instruments, deals with such combinations so that prevention may be accomplished before a cure becomes necessary. Therefore, the acts constituting the actual execution of the purpose of a criminal conspiracy are only evidence of the existence of such conspiracy, which is the ultimate fact to be proved in order to establish the wrongful act against which the statute inveighs.

3. It is further contended and argued with much earnestness that the superior court is without jurisdiction of criminal cases arising under the anti-trust law, but that such cases are cognizable alone in the justice's or police court. This contention is untenable, as we think we can without difficulty show.

The argument upon this point arises out of the failure of the legislature to expressly declare, in the penal section of the statute, whether a violation of the provisions of the law constitutes a felony or a misdemeanor, or to expressly designate the jail or prison in which a party, upon conviction, may be imprisoned in the event the court, in the exercise of the discretion vested in it, elects to impose the penalty of imprisonment. The section referred to provides that any person, firm, partnership, etc., violating either or all of the provisions of "this act" shall be "punished by a fine of not less than fifty (50) dollars nor more than five thousand ($5,000) dollars, or be imprisoned not less than six months nor more than one year, or by both such fine and imprisonment." It is clear, from the nature and extent of the penal punishment which is authorized to be inflicted by the section mentioned, that neither the justices' courts nor the "police court" of the city of Sacramento, if such a court as

the latter exists, have jurisdiction to try criminal cases arising under the statute. That this is true will readily become obvious upon reading section 5 of article VI of the constitution, and from an examination of the statutes establishing the jurisdiction and powers of the inferior courts of the city of Sacramento as to misdemeanors.

The section of the constitution adverted to, after specifically outlining the jurisdiction of the superior courts as to numerous subjects, provides generally that those courts shall have jurisdiction "of cases of misdemeanor not otherwise provided for." The jurisdiction of the class of misdemeanors to which the one in the case at bar belongs is not, as seen, expressly fixed, and, as we have stated, the penalty authorized to be imposed therefor is beyond the power of the justices' courts or of the "police court" of the city of Sacramento to impose, as will presently more clearly be made to appear; hence, by the terms of the constitution itself, the superior court of the county of Sacramento has exclusive jurisdiction of the crimes defined in the statute involved here.

The criminal jurisdiction of justices' courts is expressly confined, by the provisions of section 1425 of the Penal Code, to "all misdemeanors punishable by fine not exceeding $500, or imprisonment not exceeding six months, or by both such fine and imprisonment." The jurisdiction thus in general language conferred in criminal cases on justices' courts is in addition to the jurisdiction vested in such courts of other expressly enumerated offenses, for none of which, however, does the penalty exceed a fine of $500 or imprisonment for six months, or both.

There is no distinct court known and designated as the "police court" of the city of Sacramento, exercising the jurisdiction ordinarily given to municipal police courts. The city justice's court of said city exercises the jurisdiction and performs all the functions of a police court under the authority and power vested in it by section 1425 of the Penal Code, *supra*, and not from any power which may be supposed to have been given it by the charter of the city of Sacramento, approved by the legislature of 1893. (Stats. 1893, p. 564.) But, even upon the assumption that there resided in the legislature at the time of its approval of said

charter the power to create by such means or through such instrumentality municipal courts or judicial tribunals of any character, or to thus confer upon the city justices' courts judicial functions or duties in addition to those prescribed by statute—a power which it has been held did not exist in the legislature at that time (*Ex parte Sparks*, 120 Cal. 395, [52 Pac. 715])—the provision of said charter with respect to the jurisdiction of the court thus sought to be set up or upon which new judicial functions were thus attempted to be conferred would not confer upon such court jurisdiction of the offenses denounced by the statute concerned here. Said provision (article IV, subdivision 3, of said charter), substantially follows and copies all of section 1425 of the Penal Code, and includes the following general language of said section: ''And all misdemeanors punishable by fine not exceeding $500, or imprisonment not exceeding six months, or by both such fine and imprisonment.''

Section 4426 of the Political Code can have no application here because, as we have seen, there does not exist in the city of Sacramento a police or any other municipal court, strictly speaking, and if there did exist there such a court the section referred to would clothe it with no more power as to misdemeanors than is conferred upon justices' courts generally by section 1425 of the Penal Code.

Counsel for appellant declare that they are sustained in the point now under review by the case of *Union Ice Co. etc. et al.* v. *Rose*, 11 Cal. App. 357, [104 Pac. 1006]. But counsel cannot point out the remotest analogy between the case at bar and the one cited favorable to their contention upon the point under consideration.

The cited case involved an application to the district court of appeal of the second district, for a writ of prohibition to restrain the respondent, a police court judge in the city of Los Angeles, from further attempting to entertain jurisdiction of a criminal prosecution inaugurated under the anti-trust law, upon the ground that the trial of the case was not, under the provisions of said law, within the jurisdiction of said court, and the appellate court, upholding the constitutionality of an act of the legislature of 1901 creating police courts for cities of the one and one-half class, to which the city of Los Angeles belongs, merely holds that the police

courts so created, having been given, by section 2 of said act, jurisdiction of *all* misdemeanors punishable by fine or by imprisonment, or by both such fine and imprisonment, committed in cities where such police courts are held, are thus invested with jurisdiction to try cases involving offenses created by the Cartwright law. No one will undertake to challenge the soundness of that conclusion. Nor will the proposition be disputed that the legislature has the right and the power to confer upon justices' and police courts jurisdiction of all *misdemeanors,* whatever may be the extent of the punishment authorized to be inflicted in the event of a conviction thereof, such courts being limited, of course, in the execution of their judgments of imprisonment to imprisonment in a local or county jail.

But it is at once perceivable upon reading the opinion in the cited case that it has no application here. There is, as we have shown, no police court in the city of Sacramento to which the provisions of the statute of 1901, *supra,* can apply. Besides, the court in that case in effect expresses the opinion that in those cities where the justices' and police courts are limited in their jurisdiction to the trial of misdemeanors for which no greater penalty than that prescribed by section 1425 of the Penal Code, and section 4426 of the Political Code, the jurisdiction of criminal prosecutions under the anti-trust law is exclusively in the superior courts.

Nor does the fact that the legislature omitted to specifically designate the jail or prison in which a sentence of imprisonment shall be executed under the statute here render any the less manifest the soundness of the proposition that jurisdiction of these cases is alone in the superior courts of those counties where jurisdiction thereof is not otherwise expressly apportioned or assigned. We are not called upon here to inquire whether the legislature contemplated, in the enactment of the anti-trust law, that more than a county jail sentence of imprisonment should, under any circumstances, be imposed for a violation of its provisions, or intended to give to the superior courts the power to determine in any case whether an infraction of the law shall, by the nature of the punishment inflicted therefor, operate as a felony or as a misdemeanor. (Pen. Code, sec. 17; *People* v. *Gray,* 137 Cal. 268, [70 Pac. 20]; *In re Sullivan,* 3 Cal. App. 193,

[84 Pac. 781].)   Nor (the court in the present case having
treated the offense of the appellant as a misdemeanor by
the nature of the punishment imposed), are we required to
speculate as to what may be the effect, if any, upon the
question of the validity of the penal section of the statute
of a want of uniformity in the nature of the punishments
imposed which may arise by reason of the jurisdiction in
some instances being alone in the superior courts and in
others exclusively in police courts.   It is, nevertheless, true,
as declared, that no proposition could be further removed
from the realm of disputation than that, from the very na-
ture and extent of the punishment prescribed, the justices'
courts of the city of Sacramento are without jurisdiction of
this class of misdemeanors.   We judicially know that the
judgments of imprisonment of justices' courts in criminal
cases cannot be executed in any other than the county jail,
except in those cases where, in certain cities, a justice's
court performs the functions of a police court by taking
cognizance of cases arising under city ordinances.   We fur-
ther know, judicially, that the judgments of the superior
courts in criminal cases are, save in a few exceptional cases,
executed either by imprisonment in a state prison or by the
infliction of the death penalty.   We can, therefore, judi-
cially know, and thus readily determine, when a statutory
offense is cognizable in the superior or the justice's court by
reference to the nature and extent of the punishment pre-
scribed, whether the statute designates such offense as a felony
or a misdemeanor or as neither, or whether or not it specifies
the jail or prison in which the judgment is to be executed.
The truth is that, in the determination whether a certain
offense is a felony or a misdemeanor, no material aid is neces-
sarily afforded by the mere characterization of the prohibited
and penalized act as either the one or the other, since the
nature and extent and mode of the punishment prescribed
(or inflicted, where the superior court is clothed with a dis-
cretion of determining whether the sentence shall be ex-
ecuted by imprisonment either in a state prison or the county
jail), is the sole test.   (Pen. Code, sec. 17.)   For illustra-
tion, if a statute should denounce a certain act as a felony,
but limited the power of punishment therefor to imprison-
ment in the county jail for a term not exceeding six months

or a fine not exceeding $500, or by both such fine and imprisonment, it would readily appear, notwithstanding its designation by the statute as a felony, that, from the nature of the punishment prescribed, the act so denounced and designated could be nothing more than an ordinary misdemeanor, of which justices' courts have exclusive jurisdiction. Therefore, in the case at bar the nature of the punishment prescribed, being in excess of the punishment which a justice's court possesses the power to impose, fixes the jurisdiction in the superior court of Sacramento county as clearly and as unquestionably as though such jurisdiction were conferred in express terms.

4. The contention that the evidence does not justify the verdict is not sustained by the record.

We shall not undertake an elaborate or detailed examination of the evidence as it is presented by the record and upon which the jury felt justified in adjudging the appellant guilty of the crime charged against him. It will suffice to say that the most that can be said of the evidence is that upon the question of the defendant's guilt, there exists therein a substantial conflict, and in that state of the record the verdict only represents the exercise of a power which resides exclusively within the province of the jury.

We may, however, point to these facts which not only stand undisputed, but some of which the appellant himself admitted at the trial: That there existed in the city of Sacramento at the time of the trial an organization known as the Sacramento Butchers' Protective Association, which was composed of a large majority, if not all, with the exception of Albert Robinson, of the retail meat dealers in said city; that said Robinson was not a member of said association; that when he (Robinson) first applied to appellant to supply him with fresh meats to be sold in said city by retail, said appellant stated to him that, before he could give him a definite answer with regard to the proposition, he (appellant) would be required to first confer with the main office at San Francisco; that appellant did finally furnish Robinson with fresh meats, but uniformly charged him, variously, a cent and a cent and a half and two cents per pound more for meats than he charged the members of the association for the same kind of meats. Appellant was a witness for himself, and

admitted charging Robinson more for meats than he required members of the association to pay for the same class of meats, and the only explanation he had to offer for thus discriminating against Robinson was that he had a right to do so, and had been so advised by his attorney.

There was other testimony received which tended to establish the truth of the charge against the appellant. It was, for instance, shown that numerous complaints involving protests against selling meats to Robinson by the meat company were made to appellant by certain members of the butchers' association, and these complainants, except in the case of one who claimed that Robinson's place of business was situated nearer his place of business than the rules of the association permitted, were usually satisfied after inspecting Robinson's bills, disclosing that he was paying higher prices for meats than they were compelled to pay. It was, moreover, shown by the witness, Brier, the stenographer who reported the testimony at the preliminary examination of the appellant, that at said examination O'Keefe was a witness, and as such stated, among other things, that he (O'Keefe) "did not wish to encourage Robinson's trade, and also in his testimony said that he consulted with members of the Sacramento Butchers' Association about selling Robinson meat"; that O'Keefe further testified at said examination that "Robinson paid more for his meat than was paid by anybody else purchasing beef from his corporation at that time . . . "; that the "defendant also testified in his examination that the prices on meat sold by him to Robinson from January 4th to 11th, inclusive, were higher than the prices on the meats sold by him during that time to members of the Sacramento Butchers' Protective Association"; that he stated that "he did not propose to give any satisfaction to Robinson; that he knew that Robinson was not a member of the association; that he knew the other dealers getting meat here were members of that association; stated that he talked with members of the association about selling Robinson meat prior to the time Robinson came to see him in reference to buying meat from the Western Meat Company, and prior to the time of selling Robinson meat; stated that it was his intention to consult as many of the members as he could before selling Robinson meats; that he would be gov-

erned by the desires of the association in dealing with Robinson, and that in his dealings with Robinson he was governed by the desires of the members of the association,'' etc. There is considerable more testimony shown by the record corroborative of that of which the foregoing is a mere synopsis, but we have referred sufficiently to the proof adduced by the people to show that the jury were justified in reaching the conclusion that the charge alleged in the information was established by the degree of proof required in criminal cases. As we have before stated, the gist or gravamen of the crime charged in the information is the formation by the parties named therein of the conspiracy for the purpose of destroying free competition in the retail meat business in the city of Sacramento, and, therefore, except in so far as it serves as evidence of the crime charged, the actual execution of the conspiracy is immaterial. It is enough, in other words, to show that the purpose of the combination into which the parties referred to in the information entered was to carry out contracts and agreements and understandings between them in restraint of trade. Therefore, while it is not for this court to analyze the evidence with the purpose of ascertaining and passing upon its probative force and effect, it may well be suggested that with the uncontradicted evidence of the appellant's admissions, considered with the other circumstances to which we have briefly referred, what possible ground is there presented here for holding, or even doubting, that the conclusion of the jury that the purpose of the combination was to circumvent legitimate competition in the business of retailing meats in the city of Sacramento is not justified. It is idle, and no answer to this position, to say, as is the fact, that the appellant and each of the members of the Butchers' Protective Association positively denied that there ever was any ''understanding, compact or agreement'' between the members of said association and the Western Meat Company or O'Keefe, as the manager of said company, ''whereby it was understood or agreed in any manner, shape or form that the Western Meat Company was to charge persons who did not belong to that association a higher or a different price for fresh meats than would be charged members of the Butchers' Protective Association''; for thus there is, plainly, brought

about that conflict only which, under our system, forecloses interference by reviewing courts with the verdict of a jury or the findings of a court.

5. There are many alleged errors assigned in the rulings of the court upon questions involving the admission and rejection of evidence. All these we shall not undertake to specially review, for it will be sufficient to say that we have been unable, after a careful examination of these assignments, to find in any of the rulings, even if it might well be conceded that some of them were erroneous, anything prejudicial to the substantial rights of the appellant. But most of the objections interposed by appellant to the admission of certain testimony, in their very nature bear upon the weight rather than upon the question of the competency or relevancy of such testimony.

We may, however, point out a few of the overruled objections interposed by the defendant, and of which advantage is sought to be taken by appellant on this appeal, as illustrating the nonprejudicial effect of the rulings generally of the trial court, assuming that they or some of them were not strictly correct.

Certain witnesses, introduced by the people, testified that Robinson bought smoked and cured meats from the company and was charged therefor prices at which the same kind and quality of such meats were sold to other retailers, including the members of the butchers' association. There was no complaint, nor was there any dispute upon the proposition that the company discriminated in prices against Robinson in the sale of smoked and cured meats. The charge was, as the evidence clearly discloses, that the discrimination complained of was made on the sale of fresh meats. The testimony with regard to smoked or cured meats was, in some measure, whether large or small is unimportant, corroborative of the evidence of the conspiracy charged, showing that the meat company discriminated in favor of the members of the butchers' association and against Robinson in the sale of fresh meats. In other words, it emphasized to some extent the direct proof of the existence of the conspiracy by showing that as to those meats in which the members of the association did not deal, the meat company did not discriminate against Robinson but sold him such

meats at normal prices. If such were not the purpose and effect of the testimony concerning cured or smoked meats, then it had none at all, and therefore, if erroneously admitted, could not have been prejudicial.

Objection was also made and overruled to the introduction in evidence by the people of the by-laws of the Butchers' Protective Association. We think the ruling was proper. The by-laws were not only proper for the purpose of disclosing the identity of the members of the association, but also to show the nature and purposes of the association and the object of its connection, if any, with the Western Meat Company. Indeed, if the by-laws tended in any manner to disclose the criminal conspiracy charged in the information, they were competent evidence for that purpose. (*Judd* v. *Harrington*, 139 N. Y. 105, [34 N. E. 790]; 10 Am. & Eng. Ency. of Law, p. 863.) But if the by-laws failed to show, or contained nothing tending to disclose the conspiracy charged, then, clearly they were harmless as evidence, and their admission into the record could have had no prejudicial effect upon the rights of the appellant.

The further claim is made that the court erred to the detriment of the defendant by allowing the people to inquire of the members of the association, upon cross-examination, whether they contributed money toward the employment of counsel for the defense or otherwise aided the defendant in the preparation and maintenance of his defense. The object of this cross-examination was, of course, to show that the members of the association were more than ordinarily interested in the defense and were, therefore, partisans. It is not necessary to refer to authorities to show the manifest propriety of the cross-examination which appellant condemns. It is always proper for a party against whom a witness has given damaging testimony to show out of the mouth of the witness himself, if he can, or by other sources, if necessary, that such witness has an unusual interest in the outcome of the case, thus putting the jury in possession of a circumstance which may materially aid them in determining how much weight, if any, the testimony of such witness is entitled to.

Thus we have referred to some of the many objections against the validity of the judgment and order here based

upon the rulings of the trial court upon the evidence, and, as suggested, they fairly represent the general character, in their effect upon the rights of the appellant, of those other objections to which we must forbear giving special attention.

6. Many of the instructions of the court are assailed as involving erroneous statements of the law applicable to the case. We shall not specially review all these assignments. The charge of the court in its entirety is full, clear and fair upon all the vital points in the case.

The instructions by which the jury were told that the crime of conspiracy could be proved by circumstantial as well as by direct evidence were perfectly proper. No reason exists for requiring the proof of the crime of conspiracy to be by means of direct rather than by circumstantial evidence. No one has ever challenged the proposition that it is competent to prove any ultimate fact by circumstantial evidence. Indeed, it would be impossible to prove many cases of conspiracy or of any other crime without the aid of such evidence.

The italicized part of the following instruction is particularly criticised:

"The common design is the essence of the charge, and while it is necessary in order to establish a conspiracy, to prove a combination of two or more persons, by concerted action, to accomplish the criminal or unlawful purpose, *it is not necessary to constitute a conspiracy that two or more persons should meet together, and enter into an explicit or formal agreement for an unlawful scheme, or that they should directly, by words or in writing, state what the unlawful scheme was to be, and the detail of the plans or means by which the unlawful combination was to be made effective.* It is sufficient if two or more persons, in any manner, or through any contrivance, positively or tacitly come to a mutual understanding to accomplish a common and unlawful design. In other words, where an unlawful end is sought to be effected, and two or more persons, actuated by the common purpose of accomplishing that end, work together, in any way, in furtherance of the unlawful scheme, every one of said persons becomes a member of the conspiracy, although the part he was to take therein was a subordinate one, or

was to be executed at a remote distance from the other conspirators.''

The evident and rational meaning of the portion of the foregoing instruction put in italics, when read with the remainder of said instruction, is that ''no explicit or formal agreement'' need be proved, if it be otherwise satisfactorily proved that two or more persons, in any manner, come to a mutual understanding to accomplish a common and unlawful design. In other words, the instruction in effect, and with reasonable clearness, declared to the jury that it is immaterial how or in what manner a conspiracy may be formed, so long as it sufficiently appears from the evidence that it was formed for an unlawful purpose.

Several other instructions of similar import to the foregoing are complained of, but in view of what we have said with regard to the quoted instruction they need not be specially noticed.

The instruction to the effect that, if the jury should find from the evidence beyond a reasonable doubt that, in pursuance of an understanding or agreement, either express or tacit, between one F. J. Salcedo, a member of the butchers' association and the defendant, whereby O'Keefe agreed to charge, and did charge, Albert Robinson more for the meat purchased by him of said defendant than was charged by said defendant to any member of said association, with the intent to lessen competition, it would be the duty of the jury to convict the defendant, was pertinent, and based upon the testimony of the witness Brier and that of said Salcedo. It is not disputed that Salcedo was, at the times mentioned in the information, a member of the butchers' association, and it further appears that on several different occasions he personally remonstrated with the defendant against the sale of fresh meats to Robinson.

It will be remembered that it was proved that the defendant himself admitted, while on the witness-stand at the preliminary hearing of the charge against him, that, in his dealings with Robinson ''he was governed by the desires of the members of the association.''

We have thus given attention to some of the more important objections to the charge of the court. As declared, the instructions as a whole with clearness correctly declared to

the jury the rules by which they were to be governed in considering the evidence.

Some intimation is thrown out by counsel for the appellant that the law against trusts and unlawful combinations is out of joint with the constitution, and as well conflicts with the law on the subject of criminal conspiracies as defined by the Penal Code. The specific ground for the constitutional objection to the law is not pointed out, and we do not think any such objection can be shown. Nor can we perceive any incompatibility, if such an objection could be successfully urged against the anti-trust law, between the latter and the code section pertaining to the crime of conspiracy. The essence or gist of conspiracy here, as is true of the crime as it is defined by section 182 of the Penal Code, is in the formation and maintenance of the conspiracy for the purpose of accomplishing some unlawful object, or, also under the code, for the purpose of accomplishing a lawful object by unlawful means. As we have before declared, in the case at bar the actual acts constituting the crystallization of the object of the conspiracy constitute evidence only of the unlawful combination or agreement to co-operate together for the purpose of destroying free competition in trade, and the only distinction, which is none at all, so far as the crime itself is concerned, between the conspiracy charged here and that with which the code section deals, is that the former is made to apply to a different object from any mentioned in the code.

We have found nothing in the record demanding a reversal of either the judgment or the order, and both are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 23, 1910.