[Crim. No. 659.  Third Appellate District.—March 23, 1923.]

THE PEOPLE, Appellant, v. Y. WONG, Respondent.

[1] MISDEMEANORS—COURTS—JURISDICTION.—It is within the power of the legislature to confer upon police and justices' courts exclusive jurisdiction to try all misdemeanors, whether of the ordinary or what is commonly termed high-grade misdemeanors.

[2] ID.—JURISDICTION OF SUPERIOR COURT—WHEN DIVESTED.—While the superior court, under section 5 of article VI of the constitution, has and will retain jurisdiction of misdemeanors "not otherwise provided for," such jurisdiction will be divested the moment the legislature, under the power vested in it to establish inferior courts in any incorporated city or town, township, county, or city and county and to fix the number and the jurisdiction and powers of such inferior courts, by law confers upon justices' or police courts exclusive jurisdiction of all misdemeanors.

[3] ID.—JURISDICTION—FREEHOLDERS' CHARTER.—Under the authority of section 8½ of article XI of the constitution, a freeholders' charter may legally provide that any police or municipal court that may be established as in that section authorized shall, within the limits of the city for which such charter has been adopted and approved, have exclusive jurisdiction of both ordinary and so-called high-grade misdemeanors; and jurisdiction of high-grade misdemeanors may competently thus be conferred upon and exercised by police or municipal courts of certain cities and still be retained by the superior court as to other cities governed by freeholders' charters.

[4] ID.—JURISDICTION—CITY OF STOCKTON.—Although the freeholders' charter of the city of Stockton makes no provision for a police or other municipal court, nor does it make any reference whatsoever to any municipal or other court, under the statute of 1885 (Stats. 1885, p. 213), as amended by the legislature of 1891 (Stats. 1891, p. 292), the jurisdiction of all misdemeanors committed within the

61 Cal. App.—32

limits of incorporated cities of the class to which the city of Stockton belongs is vested exclusively in the police or justice's court of said city.

[5] ID.—ACT OF 1885—CONSTITUTIONALITY OF TITLE.—The title of the act of 1885, "An act to provide for police courts in cities having 30,000 and under 100,000 inhabitants, and to provide for officers thereof," is sufficient to comply with the mandate of section 24 of article IV of the constitution that the subject of every act of the legislature shall be expressed in its title.

APPEAL from an order of the Superior Court of San Joaquin County dismissing an information charging a violation of the Medical Practice Act. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Appellant.

Joseph D. Malloy for Respondent.

HART, J.—The district attorney of San Joaquin County filed in the superior court thereof an information charging the defendant with a misdemeanor, in that, on or about the nineteenth day of May, 1922, and prior to the filing of said information, in said court, said defendant practiced and attempted to practice and advertised and held himself out as practicing a system or mode of treating the sick and afflicted, without having at said time "a valid unrevoked certificate from the State Board of Medical Examiners of the State of California" so to do. (Stats. 1913, p. 722.)

At the time the defendant was called for arraignment before the superior court upon said information, his counsel moved the dismissal of the accusatory pleading on the ground that said court was without jurisdiction to try the defendant on the charge thus alleged against him, and the motion was granted.

From the order granting said motion of dismissal the people appeal.

The specific ground upon which the order of dismissal was made was that, under the statute of 1885 (Stats. 1885, p. 213), as amended by the legislature of 1891 (Stats. 1891, p. 292), the jurisdiction of all misdemeanors committed

within the limits of incorporated cities of the class to which the city of Stockton belongs, the crime here charged being alleged to have been committed in said city, is vested exclusively in the police or justice's court of said city.

Section 17 of the State Medical Act, so called, upon which the information in this case is founded, prescribes as a penalty for practicing or attempting to practice the science of treating the sick or afflicted or in holding oneself out as such a practitioner, without having at the time of so doing a valid, unrevoked certificate as provided in said act, a fine of not less than $100 nor more than $600 or imprisonment for a term of not less than sixty days nor more than 180 days, or both such fine and imprisonment.

Under section 1425 of the Penal Code the power or authority of a police or justice's court to inflict penalties for misdemeanors is limited to the imposition of a fine not exceeding $500 or imprisonment not exceeding six months or by both such fine and imprisonment, except as to certain of the offenses specifically enumerated in said section, for which a greater penalty is prescribed in the sections of the Penal Code defining the same. (See, also, sec. 4426, Pol. Code; *People* v. *Sacramento Butchers' Assn.*, 12 Cal. App. 471, 488, 489 [107 Pac. 712].)

It is manifest that unless there is some law or provision of law expressly vesting in a police or justice's court exclusive jurisdiction of the offense charged in the information herein, the sole jurisdiction of said offense is in the superior court, since the penalty prescribed therefor by the medical act is in excess of that which it is within the legal competence of a justice's or police court to impose. [1] That it is within the power of the legislature to confer upon police and justices' courts exclusive jurisdiction to try all misdemeanors, whether of the ordinary or what is commonly termed high-grade misdemeanors, is not an open question in this state. Section 5 of article VI of the constitution in effect so ordains. It is in said section provided that the superior court shall have original jurisdiction "in all criminal cases amounting to a felony, and cases of misdemeanor not otherwise provided for." Under that language of the constitution the legislature may repose exclusive jurisdiction in police courts of all classes of misdemeanors punishable by fine or imprisonment or both.

(*People* v. *Cory,* 26 Cal. App. 735, 742 [148 Pac. 532]; see, also, *Ex parte Wallingford,* 60 Cal. 103; *Gafford* v. *Bush,* 60 Cal. 149; *Green* v. *Superior Court,* 78 Cal. 536 [21 Pac. 307, 541]; *Ex parte Westenberg,* 167 Cal. 309 [139 Pac. 674].) **[2]** While the superior court, under said provision of the constitution, has and will retain jurisdiction of misdemeanors "not otherwise provided for," such jurisdiction will be divested the moment the legislature, under the power vested in it to establish inferior courts in any incorporated city or town, township, county, or city and county (art. VI, sec. 1, Const.) and to fix the number and the jurisdiction and powers of such inferior courts (art. VI, sec. 11, Id.), by law confers upon justices' or police courts exclusive jurisdiction of all misdemeanors. And, under the terms of section 8½ of article XI of the constitution, it is competent in all freeholders' charters framed under the authority of section 8 of article XI to provide for the "constitution, regulation, government and jurisdiction of police courts, and other municipal courts," vesting them with "such civil and criminal jurisdiction as may by law be conferred upon inferior courts." **[3]** Under the authority of the first-mentioned provision of the constitution, a freeholders' charter may legally provide that any police or municipal court that may thus be established shall, within the limits of the city for which such charter has been adopted and approved, have exclusive jurisdiction of both ordinary and so-called high-grade misdemeanors or cases of misdemeanor of which the superior court has jurisdiction so long as jurisdiction of such misdemeanors is "not otherwise provided for." And jurisdiction of high-grade misdemeanors may competently thus be conferred upon and exercised by police or municipal courts of certain cities and still be retained by the superior court as to other cities governed by freeholders' charters, to which cities the statute of 1885 is not applicable and whose charters, although establishing police courts, have not vested in or conferred upon them jurisdiction of those high-grade misdemeanors. (See *People* v. *Sacramento Butchers' Assn.,* 12 Cal. App. 471, 477–479 [107 Pac. 712]; *Union Ice Co., etc.,* v. *Rose,* 11 Cal. App. 357 [104 Pac. 1006]; *McGranahan* v. *Police Court of San Francisco,* 56 Cal. App. 372 [205 Pac. 98].)

From the foregoing it is manifest that if there were no general valid statute expressly conferring upon police or justices' courts of incorporated cities jurisdiction of all misdemeanors, and the freeholders' charters of such cities, even if providing for police or other municipal courts, were silent as to that matter—that is, had omitted to provide that such courts should be clothed with jurisdiction of all misdemeanors—then there would not be jurisdiction of such misdemeanors "otherwise provided for," and hence such jurisdiction would remain exclusively in the superior courts.

[4] The freeholders' charter of the city of Stockton, which was approved by the legislature, in extra session, in 1911 (Stats. 1911, Extra Session, p. 254 et seq.), makes no provision for a police or other municipal court, nor does it make any reference whatsoever to any municipal or other court. If, therefore, the superior court in and for the county of San Joaquin has been divested of jurisdiction of high-grade misdemeanors, and such jurisdiction is exclusively vested in and exercisable by the justice's court of the city of Stockton, the authority for the exercise of that jurisdiction by the last-mentioned court must be found in some general law; and, as above shown, there is such a law in the act of the legislature of 1885, above referred to, and which still exists as it was then enacted, except as to one of its sections to which the legislature of 1891 made a certain amendment, which, however, does not affect the determination of any question which we are called upon to consider and decide upon this appeal.

[5] But the attorney-general challenges the validity of said act on the ground that its title does not conform to the mandate of the constitution that the subject of every act of the legislature shall be expressed in its title. (Const., art. IV, sec. 24.)

The title of the act of 1885 reads as follows: "An act to provide for police courts in cities having 30,000 and under 100,000 inhabitants, and to provide for officers thereof." The act, as amended in 1891, contains precisely the same title. The city of Stockton belongs to the class of cities mentioned in the title of said act, and if there be no constitutional objection to the act it, of course, applies to said city.

The first section of the act provides that in every city having 30,000 and less than 100,000 inhabitants the judicial power shall be vested in a police court to be held therein by the city justices, etc., and adds to the duties "now" required of such justices by law, the duty of holding such police court.

The second section of the act specifically enumerates (in four distinct subdivisions) the offenses of which such police court shall have "exclusive jurisdiction," the third subdivision of said section providing that such "exclusive jurisdiction" shall extend and attach to the following offenses: "Breaches of the peace, riots, affrays, committing wilful injuries to property, and *all misdemeanors punishable by fine or by imprisonment, or by both such fine and imprisonment.*" (Italics ours.) Thus it is to be perceived that, assuming said statute to be valid, the jurisdiction of *all* misdemeanors, whether of the high or the low grade class, is exclusively vested and cognizable in the police courts of cities having any number of inhabitants between the minimum and maximum numbers mentioned in the title and the body of the act in question; and it is as to that particular provision which it is contended by the attorney-general that the title of the act of 1885 does not respond to the provision of the constitution requiring that the subject of every act of the legislature shall be expressed in its title.

The argument, in support of the contention thus stated, is that the title of said act, to satisfy the requirement of section 24 of article IV of the constitution, that the subject of an act shall be expressed in its title, should in express language not only declare that exclusive jurisdiction of high-grade misdemeanors shall be vested in "said police courts," but that it should likewise declare that the superior courts shall thereby be divested of "their former jurisdiction of indictable misdemeanors." The contention and the argument are alike devoid of merit.

The establishment of a court means the creation of a tribunal vested with power to hear and determine controverted issues of fact and of law, and this means, of course, that its jurisdiction is pointed out and fixed by the act creating it. Indeed, a so-called "court" without jurisdiction to hear and determine controverted matters would be no court at all. Hence, the declaration in the title of the

act of 1885 that the purpose of said act was and is to provide police courts for cities containing the designated number of inhabitants of necessity means that such a tribunal is thus to be created with a certain defined and fixed jurisdiction—that is, with the power to hear and determine certain classes of cases. This proposition, however, is not disputed.

The manifest purpose of section 24 of article IV of the constitution, commanding that every act of the legislature shall embrace but one subject and that such subject shall be expressed in its title, was "to protect the members of the legislature, as well as the public against fraud; to guard against the passage of bills the titles of which gave no intimation to the members of the legislature or to the people of the matters contained therein." (*Ex parte Liddell,* 93 Cal. 633, 636 [29 Pac. 251]; Cooley's Constitutional Limitations, 6th ed., 169.) But, in construing that provision of the constitution, no court has ever held that, to meet the purpose and intent thereof, it was requisite to insert in the title of an act anything beyond what was necessary to disclose the general nature or character of the subject of the legislation contained therein. In other words, it is not necessary that the title of an act should contain an abstract of its contents. (*Abel* v. *Clark,* 84 Cal. 229 [24 Pac. 383], and cases therein cited.) "When the general purpose of the act is declared [in the title] the details provided for the accomplishment of that purpose will be regarded as necessary incidents." Thus it is held in many cases that an act entitled in general terms "an act to incorporate" a certain town may lawfully provide all means necessary for the government of the town, including taxation, courts, definition of misdemeanors, punishment of offenders, municipal improvements, etc. (*State* v. *Town of Union,* 33 N. J. L. 350; Cooley's Constitutional Limitations, 172, note 1; *Ex parte Liddell, supra.*)

In the recent case of *People* v. *French, ante,* p. 275 [214 Pac. 1003], this court, through Presiding Justice Finch, made a careful review of the cases above considered and also several later California cases construing the intent and explaining the scope of the constitutional provision in question. In that case the appellant, then a prisoner in the state prison at Folsom, was charged with the crime of

escaping from the surveillance of his guards while working on the public highway and he contended in this court that section 106 of the Penal Code, as amended in 1921 (Stats. 1921, p. 77), upon which section the information in said case was based, was unconstitutional for this reason: That, while the amending act provides that it is a crime for a prisoner to escape as well as to attempt to escape from prison, the title thereof merely declares that the act is amendatory of section 106 of the Penal Code, "relating to attempts of prisoners to escape," there being no reference in the title to the act of escaping from prison. It was held by this court, upon the authorities considered and from principle, that the title of the act of 1921 amending section 106 of the Penal Code sufficiently conformed to the constitutional requirement as to titles of legislative acts. And it is interesting to note that, in the French case, the Attorney-General—indeed, the very representative of that office who prepared the brief in the instant case—with characteristic force and vigor supported the construction of the constitutional provision which was given it by this court as in its application to the point made in said case; and we may pertinently observe that it is hardly necessary to go further than the brief prepared by the learned gentleman himself in opposition to the appeal in the French case to secure most admirable support for the conclusion that the title of the act in question in the instant case is in perfect accord with the requirements of the constitutional provision under consideration. In said brief this most rational view of the intent and scope of the said constitutional provision is expressed and urged as follows: "A title of an act may seem to be narrow in language, but upon careful consideration appears to have reasonable reference to many minor and related subdivisions of the main subject mentioned in the title. This mere detail and incidental matter may be treated of in a [constitutional] statute, even though the title may appear narrow in language."

The idea of what is really intended by the constitutional provision in question could not be expressed in more pertinent and perspicuous language and if it were necessary to look entirely to authority for the support of the position which we take with reference to the present case, it would be sufficient to accept the opinion of the Attorney-General

as expressed in the excerpt just quoted and plant the conclusion herein arrived at squarely thereon. We are firmly of the opinion that no other conclusion could justly be announced in this case than that the title of the act of 1885 clearly satisfies the requirement of section 24 of article IV of the constitution.

The order appealed from is affirmed.

Burnett, J., and Finch, P. J., concurred.