[S. F. No. 12058. In Bank.—March 4, 1927.]

## R. ARTHUR WALLACE, Respondent, v. OSCAR ZINMAN et al., Appellants.

[1] CONTRACTS—BROKERS' COMMISSIONS—TIME OF PAYMENT.—Where a written agreement provided for the payment of a certain sum for the procuring of a loan on real property "when said transaction is consummated on or before" a specified date, the promisors testifying that the purpose of the quoted provision was to negative any liability on their part in the event they should not consummate the purchase of property upon which the loan was to be a lien, and the promisee testifying that there was no such understanding but that its purpose was merely to delay payment of his fee until consummation of the sale and not to make payment contingent upon that event, the consummation of the sale was not a condition precedent to recovery of the commission, but the commission was earned when a loan was secured and the money deposited within the required time, regardless of whether or not the sale was ever consummated.

[2] USURY LAW—CONSTRUCTION—INTENT—CONSTITUTIONAL LAW.—The "Usury Law" (Stats. 1919, p. lxxxiii) was not intended to limit the charge for "examinations, views, fees, appraisals, commissions . . . " etc., made by the lender himself, but, on the contrary, the lender is to be denied all compensation or emoluments of every kind which will enlarge his return or profit on the loan beyond the maximum amount allowed by the act; and the provision with reference to charges "for examinations, views, fees, appraisals, commissions, renewals, etc.," was intended to regulate such charges when made by a third person or persons as part of the expense in connection with the loan.

---

1. See 4 Cal. Jur. 599; 4 R. C. L. 310.

2. Expenses or charges incident to loan of money as usury, note, 21 A. L. R. 797.

[3] ID. — TITLE OF ACT — CONSTITUTIONAL LAW. — The subject matter
covered by the title to the "Usury Law" is exclusively "usury,"
and the subject in said act with reference to charges and expenses
of loan brokers, not being in the title, the act is unconstitutional,
as far as that subject is concerned.

[4] ID.—INITIATIVE MEASURE—TITLE OF ACT—CONSTITUTION.—The pro-
vision of section 24 of article IV of the constitution, requiring
every act to embrace but one subject, which subject shall be ex-
pressed in its title, is applicable to a statute passed by the initia-
tive method.

[5] ID.—CHARACTER OF INITIATIVE MEASURE — APPLICATION OF CONSTI-
TUTION.—The contention that an initiative measure in its effect
is a constitutional amendment and that as constitutional amend-
ments need not conform to the provision of the constitution re-
quiring every subject contained in the act to be expressed in its
title, an initiative measure need not conform to this provision of
the constitution, cannot be maintained.

[6] ID.—ILLEGAL DISCRIMINATION—CONSTITUTIONAL LAW.—The "Usury
Law" (Stats. 1919, p. lxxxiii), contains an unlawful discrimination
between charges of brokers negotiating unsecured loans and the
same character of charges in negotiating secured loans, also with
reference to loans where the period of the loan is less than six
months; and such provisions violate sections 11 and 21 of article I
of the constitution of California, and the fourteenth amendment
to the constitution of the United States and are void.

[7] ID.—SEVERABLE PROVISIONS.—The above void provisions of the
"Usury Law" are clearly severable from the other portions of
the act.

(1) 9 C. J., p. 591, n. 17, 19, p. 598, n. 44, p. 609, n. 96; 36 Cyc.,
p. 1022, n. 96, p. 1027, n. 22, p. 1033, n. 47, p. 1050, n. 26; 39 Cyc.,
p. 1040, n. 62. (2) 36 Cyc., p. 1106, n. 29, p. 1154, n. 81. (3) 36
Cyc., p. 1045, n. 5. (4) 12 C. J., p. 740, n. 36, 42; 23 C. J., p. 59,
n. 22, p. 93, n. 91; 36 Cyc., p. 1022, n. 96, p. 1029, n. 27, p. 1033,
n. 42. (5) 12 C. J., p. 694, n. 99. (6) 12 C. J., p. 1145, n. 5, p. 1158,
n. 17, 18, p. 1161, n. 86, 87; 39 Cyc., p. 910, n. 10, p. 917, n. 52,
p. 918, n. 59, p. 971, n. 98, 4. (7) 36 Cyc., p. 976, n. 27.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco. Edmund P. Mo-
gan, Judge. Affirmed.

The facts are stated in the opinion of the court.

Leo H. Shapiro, George F. Snyder and Homer Lingen-
felter for Appellants.

George L. Sanders, A. Ohanneson and James M. Jefferson, *Amici Curiae,* for Appellants.

Russell P. Tyler for Respondent.

James S. Bennett and Emmet H. Wilson, *Amici Curiae,* for Respondent.

PRESTON, J.—Plaintiff and defendants entered into the following contract:

"In consideration of you securing a loan for $7500 subject to a Bank Loan of $13,000, interest 6%, on property situated on the Northwest Corner 5th Ave. and Fulton Sts., interest on $7500 to be 10% per annum, loan to be paid on or before two years from date. ·Said loan to be flat, ($7500).

"I agree to give you the sum of Five Hundred and Sixty ($560) Dollars and authorize Title Ins. Co. to pay said sum to you on deposit of said money on July 23, 1924, with the said Title Ins. Co., when said transaction is consummated on or before July 27, 1924.

"OSCAR ZINMAN,

"S. A. HERZBERG."

Plaintiff secured the loan and had the money deposited with the title company within the required time. He sued to recover for his services and judgment in his favor was rendered by the lower court, from which judgment defendants have appealed.

[1] The last clause of the contract "when said transaction is consummated on or before July 27, 1924," was considered ambiguous by the trial court and inquiry was made into the surrounding circumstances and understanding of the parties. It was agreed that this clause was added at the request of defendants when the paper was presented to ·them for their signatures.

Defendants testified its purpose was to negative any liability on their part in the event they should not consummate purchase of the property upon which the loan was to be a lien. Plaintiff testified that there was no such understanding, but that its purpose was merely to delay payment of his fee until consummation of the sale and not to

make payment contingent upon that event. The sale was not consummated.

In this conflict the trial court accepted plaintiff's testimony, relying upon the authority of *Purcell* v. *Firth*, 175 Cal. 746 [167 Pac. 379]. In that case it was held that an agreement to pay a commission on a sale "when the sale is consummated" did not make consummation of the sale a condition precedent to recovery of the commission, but that the commission was earned when a purchaser able and willing to buy was produced, regardless of whether or not the sale was ever consummated. We hold that the facts in the present case bring it within the rule announced in *Purcell* v. *Firth, supra.*

Appellants, however, unyielding, have sought refuge in the initiative measure, commonly known as the "Usury Law," approved at the general election November 5, 1918 (Stats. 1919, p. lxxxiii), the provision thereof relied upon being as follows:

" . . . Any person, company, association or corporation who shall . . . ask, demand, receive, take, accept or charge more than an amount equal to 5% so actually loaned and secured in all sums of $1000 or less, and 3% on all sums over $1000 in full for all examinations, views, fees, appraisals, commissions, renewals made within one year from the date of loan and charges of any kind or description whatsoever, except abstracts or certificates of title charges made under the Torrens Land Law or otherwise in the procuring, making and transacting of the business connected with such loans, . . . shall be guilty of a misdemeanor and upon conviction thereof shall be punished, . . . "

It must be admitted that the provision, if valid, was directly violated by the respondent's commission contract in that it exceeded the maximum commission allowed on a loan of that character, and in such case the contract would be unenforceable and void. (See *Berka* v. *Woodward,* 125 Cal. 119, 127 [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777]; *Levinson* v. *Boas,* 150 Cal. 185, 193 [11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575, 88 Pac. 825]; *Smith* v. *Bach,* 183 Cal. 259, 262 [191 Pac. 14]; *Firpo* v. *Murphy,* 72 Cal. App. 249 [236 Pac. 968].)

And likewise in such case it would not be necessary to present such defense by answer or other pleading, but when the illegality of plaintiff's contract appeared, it would be the duty of the court *sua sponte* to deny all relief. (*Pacific Wharf etc. Co.* v. *Dredging Co.,* 184 Cal. 21 [192 Pac. 847]; *Morey* v. *Paladini,* 187 Cal. 727 [203 Pac. 760]; *Wise* v. *Radis,* 74 Cal. App. 765 [242 Pac. 90].)

But respondent meets this claim of illegality by the counter-contention that the said provision of the so-called Usury Law is unconstitutional and void in this: That it is in direct violation of section 24 of article IV of the constitution, which provides: "Every act shall embrace but one subject, which subject shall be expressed in its title. But if any such subject shall be embraced in an act and shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title. . . . "

Also that it violates section 11 of article I, which provides: "All laws of a general nature shall have a uniform operation."

Likewise section 21 of article I, which provides: " . . . Nor shall any citizen or class of citizens, be granted privileges or immunities which, on the same terms, shall not be granted to all citizens."

And likewise is a violation of the fourteenth amendment to the constitution of the United States in that it denies to certain citizens the equal protection of the law.

We shall now discuss these various contentions. The title of the act is as follows: "An act, to be known as the usury law, relating to the rate of interest which may be charged for the loan or forbearance of money, goods or things in action, or on accounts after demand, or on judgments, providing penalties for the violation of the provisions hereof, and repealing sections one thousand nine hundred seventeen, one thousand nine hundred eighteen, one thousand nine hundred nineteen, and one thousand nine hundred twenty of the Civil Code and all acts and parts of acts in conflict with this act."

[2] We are convinced that the intent of the act is not to limit the charge for "examinations, views, fees, appraisals, commissions . . . "; made by the lender himself, but, on the contrary, the lender is to be denied all

compensation or emoluments of every kind which will enlarge his return or profit on the loan beyond the maximum amount allowed by the act. The provision is intended to regulate the charges as to examinations, views, fees, appraisals, and commissions when made by a third person or persons as part of the expense in connection with a loan. In practically every loan there will be legal expenses for some one or more of the above-enumerated items and, if reasonable, they, of course, will be allowed without tainting the transaction as usurious. But the plain intent of the act is to forbid to the lender any sum or sums whatsoever which might reach his pocket and thereby exceed the interest rate allowed by the act. In other words, it was intended by this act to deal solely with this class of charges when made by persons acting independent of the lender. In short, it is a provision to curtail the charges and expenses of loan brokers. This intent is made clearer by an examination of section 1691 of the Wisconsin Statutes of 1917, from which doubtless the draftsman of this provision gained his inspiration.

The Wisconsin section contains language dealing exclusively with personal property loan brokers, which language is identical in many respects with the language employed in the act under consideration except that the draftsman of the act here before us omitted the very language necessary to make the provision applicable to the lender himself.

In other words, the Wisconsin law provided: "Any person who . . . shall ask , . . in addition to the interest aforesaid . . . shall be guilty . . . " The omission of this language clearly evinces the intention to exclude the lender from any benefits whatsoever in connection with the loan, save and alone the maximum rate of interest allowed. *Ornstine* v. *Cary*, 126 Wis. 135 [11 L. R. A. (N. S.) 174, 105 N. W. 792], cited by counsel, upholds the validity of the Wisconsin act as it there reads, but, as we have noted, our statute does not adhere to the language of the Wisconsin act.

[3] When thus interpreted it is too clear for controversy that the subject matter of the provision of the act here under consideration is nowhere referred to directly or indirectly in the title to said statute. The subject covered by the title is exclusively "usury." The subject

covered by the provision under consideration is charges
and expenses of loan brokers. It will be noted that the
regulation of the business of real estate brokers, which
also covers loan brokerage contracts where real estate is
given as security, is controlled by an act approved June
1, 1917, and amended May 27, 1919, and May 23, 1925
(Deering's Gen. Laws 1923, part I, p. 25, Stats. 1925, p.
600), which act has been declared constitutional and valid.
(*Riley* v. *Chambers,* 181 Cal. 589 [8 A. L. R. 418, 185
Pac. 855].) In short, the subject referred to in this pro-
vision is so widely separated in meaning from the pro-
vision referred to in the title of this act that it has already
become the subject of existing independent legislation.

[4] It may, however, be contended that inasmuch as this
is a statute which was adopted by the initiative method
provided for in section 1 of article IV of the constitution,
said article IV, section 24, of the constitution, relating to
title of statutes, is for that reason inapplicable thereto.
We cannot, however, concede the efficacy of any such con-
tention. Section 22 of article I of the constitution reads:
"The provisions of this Constitution are mandatory and
prohibitory unless by express words they are declared to
be otherwise."

The purpose of this provision was before this court in
*Ex parte Liddell,* 93 Cal. 633, 636 [29 Pac. 251]. In that
case, after giving a brief outline of the history of this
character of legislation, the court said: "At the present
time, however, the constitutions of many states contain
provisions similar to that quoted above. The object of the
provision is to prevent legislative abuse—to prevent the
passage of acts bearing deceitful and misleading titles.
It is intended to protect the members of the legislature,
as well as the public, against fraud; to guard against the
passage of bills the titles of which give no intimation to
the members of the legislature or to the people of the
matters contained therein. (Cooley's Constitutional Limi-
tations, 6th ed., 169.)"

The holding of this court as thus stated has not been
departed from to any extent. (*Estate of Elliott,* 165 Cal.
339, 344 [132 Pac. 439]; see, also, *People* v. *Y. Wong,*
61 Cal. App. 497, 503 [215 Pac. 409]; *Watson* v. *Greely,*
67 Cal. App. 328, 342 [227 Pac. 664].) There can be no

just reason assigned for holding that this provision is
mandatory when applied to statutes passed regularly by
the legislature and at the same time inapplicable to stat-
utes initiated by petition and passed by direct vote of the
people. Every reason going to protect the public from
imposition by undesignated matter in the title of an act
of the legislature obtains with like if not greater force to
a measure that is to be voted upon by the people. It is
common knowledge that an initiative measure is originated
by some organization or a small group of people and they
circulate a petition requiring the signature of only eight
per cent of the voters; that the measure is then placed
upon the ballot and a large number of the population,
not knowing what the context of the act is, rely solely
upon its title as a guide to intelligent voting thereon.
Speaking of the identical question before us, the supreme
court of Oregon, in *State* v. *Richardson*, 48 Or. 309, 319
[8 L. R. A. (N. S.) 362, 85 Pac. 225, 229], said:

"The validity of laws adopted at the polls must be deter-
mined like enactments by the legislative assembly, by the
test of the Constitution as modified by the amendment
thereto. Though the argument that a proposed measure
must depend upon its own merits may not apply to acts
initiated by petitions, a valid reason for requiring that the
subject matter of laws to be adopted or rejected at the
polls should be stated in the title nevertheless exists. The
majority of qualified electors are so much interested in man-
aging their own affairs that they have no time carefully to
consider measures affecting the general public. A great
number of voters undoubtedly have a superficial knowledge of
proposed laws to be voted upon, which is derived from
newspaper comments or from conversation with their
associates. We think the assertion may safely be ventured
that it is only the few persons who earnestly favor or
zealously oppose the passage of a proposed law, initiated
by petition, who have attentively studied its contents and
know how it will probably affect their private interests.
The greater number of voters do not possess this informa-
tion and usually derive their knowledge of the contents
of a proposed law from an inspection of the title thereof,
which is sometimes secured only from the very meager
details afforded by a ballot which is examined in an elec-

tion booth preparatory to exercising the right of suffrage. It is important, therefore, that the title to laws proposed in the manner indicated should strictly comply with the constitutional requirement.''

[5]  It has been urged, however, that an initiative measure in its effect is a constitutional amendment, and as constitutional amendments need not conform to the provision of the constitution quoted above, this statute need not so conform to it. We are unable to accord any weight whatsoever to this contention. We do not recognize an initiative measure as having any greater strength or dignity than attaches to any other legislation. Throughout section 1 of article IV of the constitution a distinct line of demarcation is kept between a law or an act and a constitutional amendment. It is only another system added to our plan of state government by a permissive amendment to the constitution, but it was at no time intended that such permissive legislation by direct vote should override the other safeguards of the constitution. If an amendment of the constitution were intended, the provision requires steps to be taken that will apprise the voters thereof so that they may intelligently judge of the fitness of such measure as a constituent part of the organic law. We have a state government with three departments, each to check upon the others, and it would be subversive of the very foundation purposes of our government to permit an initiative act of any type to throw out of gear our entire legal mechanism. Our common sense makes us rebel at the suggestion. This question has been before the courts of other states and the holding we here announce has been the holding there without exception.

*People* v. *Prevost,* 55 Colo. 199 [134 Pac. 129], was an action for *mandamus,* relator claiming that an initiative statute adopted by the people at the same election at which they adopted a constitutional amendment must itself be considered as a constitutional amendment and as such modified the amendment adopted by the people. In answer to this contention the supreme court of the state said:

''In order to arrive at that conclusion, he contends that a statute relating to the publication of initiated laws, which was itself initiated and voted upon at the election in November, 1912, was a constitutional amendment, tho in form
200 Cal.—38

a statute. This measure was initiated as a statute, and submitted and voted upon as such. There was nothing in or about it that in any manner indicated that those who had initiated it, or the people who voted upon it, had a thought or a suspicion that it was a constitutional amendment or intended for one. . . . After claiming that the statute would have been unconstitutional if adopted, he contends that the measure, tho to all other appearances and indications a statute, was in fact a constitutional amendment. Reduced to its last analysis, the argument is this: If an initiated measure contravenes the Constitution, tho it is in form a statute, professedly intended as such, with nothing about it to indicate that it was intended for a constitutional amendment, nevertheless it is a constitutional amendment. Such a position cannot be maintained in reason or logic. To say that the people could thus, without intending to do so, and unwittingly, amend their Constitution is a proposition that carries with itself its own refutation. The only reasonable thing that can be said of a measure that in form and to all indicated intents and purposes is a statute which contravenes the Constitution is, not that it is a constitutional amendment, but that it is itself unconstitutional.''

To the same effect see *State* v. *Becker,* 290 Mo. 560 [235 S. W. 1017, 1021].

And in *Galvin* v. *Board of Supervisors,* 195 Cal. 686, 692, 693 [235 Pac. 450], our own court in principle disposes of this question, holding as follows: ''The initiative amendment to the Constitution itself must be interpreted in harmony with the other provisions of the organic law of this state of which it has become a part. To construe it otherwise would be to break down and destroy the barriers and limitations which the Constitution, read as a whole, has cast about legislation, both state and local. For example, the Constitution provides in Section 11 of Article XI thereof, that 'Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws.' This provision of the Constitution constitutes an inhibition against the adoption by counties, whether acting by means of the initiative or otherwise, of local laws and ordinances which are in conflict with general laws, and

it was clearly not the intendment of the framers of the initiative amendment or of the people who adopted it to wipe out this salutary provision of the Constitution. Again, the Constitution, in Sections 4 and 5 of Article XI thereof, provides as follows: . . . This grant of power to the legislature to enact general and uniform laws relating to the matters referred to in the foregoing clauses of the Constitution constitutes in itself a limitation upon the power of counties, whether acting thru their regularly constituted legislative bodies or attempting to act directly thru initiative legislation to adopt ordinances or regulations which would have the effect of destroying the uniformity in regard to such matters which the state legislature by the enactment of general and uniform laws was required to create and maintain." (See, also, *State* v. *Richardson, supra.*)

It may be said in passing that section 1197a of the Political Code throws no light upon the question before us, as this act could not have been intended to dispense with this requirement as to title.

We must, therefore, hold that the statute in question is subject to section 24 of article IV of the constitution, hereinbefore quoted, and that inasmuch as the provision here under consideration is an independent subject not referred to in the title to said act, so much of said act as comprises this provision is void.

[6] Moreover, this provision contains within itself destructive elements which also compel the conclusion that it is void. It purports to fix a maximum limitation on fees, commissions, and charges with respect to loans negotiated by the broker where such loans are secured within the meaning of that act, with no limitation fixed upon such fees, charges, and commissions when applied to brokers who aid in the negotiation and consummation of unsecured loans except the inhibition against any kind of charges when the loan is not secured by real estate and is to run for a shorter period than six months. In other words, it is plain there is discrimination between charges of brokers negotiating unsecured loans and the same character of charges in negotiating secured loans. There is likewise a discrimination with reference to loans where the period of the loan is less than six months, it being made a crimi-

nal offense to charge a commission of any kind on a loan running for a shorter period than six months unless the loan is secured by a mortgage upon real estate. It was for this very reason that the act of March 20, 1905 (Stats. 1905, p. 422), "an act fixing the rates of interest and charges upon loans on chattel mortgages," was declared invalid in that there was a discrimination between individuals in the same business by allowing a certain rate of interest to some and denying it to others. The court, considering said act, in *Ex parte Sohncke*, 148 Cal. 262, 268 [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 956, 959], said:

"The business of loaning money is as much a part of domestic trade and commerce as any other legitimate business. There is no substantial reason why those who lend money in sums not exceeding three hundred dollars on chattel mortgages of upholstery, pictures, or works of art, pianos, organs, sewing-machines, safes, professional libraries, or office furniture or fixtures, instruments of surveyors, physicians, or dentists, printing presses, or printing material, should be limited in their charges and the business they do in that respect made less profitable than it otherwise would be, while they or others who lend on chattel mortgages upon instruments of a photographer, livestock, agricultural implements, equipments of livery stables or other property allowed to be mortgaged by section 2955 of the Civil Code (Stats. 1905, p. 36, c. 40), and not enumerated in the act under consideration, or who lend upon pledges of any kind of personal property, or who lend in sums exceeding three hundred dollars upon any kind of security, should be allowed to exact any rate of interest or other charge which they can obtain from the borrower. It is a part of the same kind of business, and there is no distinction between the particular classes of persons or things affected by the act and those exempted from its provisions that will justify special legislation. It may be that such exhorbitant charges should be absolutely prohibited, but, if so, the prohibition should be made general, and should extend to all who engage in the business as lenders on the one hand, and should protect all who are made the victims thereof on the other hand, without discrimination in favor of any."

There is no essential difference between a broker engaged in negotiating secured loans and one engaged in negotiating unsecured loans and certainly no essential difference between a broker engaged in negotiating loans on real property and one negotiating loans on other classes of security. It may also well be contended that said provision discriminates without intrinsic or constitutional distinction between contenders in other departments of the brokerage business. These discriminations are so plain that it requires but their statement to demonstrate that said provision is in violation of both sections 11 and 21 of article I of the constitution of California, and also the fourteenth amendment to the constitution of the United States.

These views render it unnecessary to give consideration to the further contention of respondent that the provision is invalid because of the previous decisions of this court in the line of cases known as employment agency cases, to wit: *Ex parte Dickey,* 144 Cal. 234 [103 Am. St. Rep. 82, 1 Ann. Cas. 428, 66 L. R. A. 928, 77 Pac. 924], *In re Smith,* 193 Cal. 337 [223 Pac. 971], and *In re Boynton,* 193 Cal. 782 [223 Pac. 972].

In holding this provision to be a violation of the constitution, we are by no means intending to indorse any subterfuge or plan by which the lender could or would secure to himself a greater amount of interest than that provided for by law. We recognize that in every transaction the court will look to the substance thereof and not merely to the form, and if, by any kind of device, the lender is securing a greater benefit than that provided in the law, the contract will be held usurious even though it be cloaked under the guise of a commission, bonus, or other name. This has been made clear by our own court in the case of *Blodgett* v. *Rheinschild,* 56 Cal. App. 728, 733 [206 Pac. 674, 676], where the court quotes approvingly this language: "As a general rule, any benefit or advantage exacted by the lender from the borrower, whatever be its name or form, which, added to the interest taken or reserved, would yield to the lender a greater profit upon his loan than is allowed by law is deemed usury (39 Cyc. 971)." (See, also, to the same effect, *Niles* v. *Kavanagh,* 179 Cal. 98 [1 A. L. R. 831, 175 Pac. 462].)

In other words, in holding that a legitimate third party broker in a loan transaction is not covered by this statute, we are not intending to in anywise aid or assist or countenance the lender in taking from the borrower any greater interest charge than that provided by law, whatsoever may be his method of so doing.

We concede no weight to the claim urged that this provision of the act was intended exclusively to allow a commission or bonus to the lender and to have no application to the third party, the broker. The views announced above compel a conclusion which is the reverse of this contention and we hold that the provision was not intended to apply in anywise to increase the profit to the lender beyond the maximum rate of interest specified in the act.

[7] It may be said also in conclusion that the provision of the statute which has been successfully assaulted in this proceeding is clearly severable from the other portions of the act, and whether or not there may be other invalid provisions therein can be of no concern to the parties to this action.

Judgment affirmed.

Shenk, J., Curtis, J., Richards, J., Seawell, J., Waste, C. J., and Koford, J., *pro tem.*, concurred.